84 A.3d 603

COMMONWEALTH of Pennsylvania, Appellee

v.

James Howard NEIMAN, Jr., Appellant

The General Assembly of the Commonwealth of Pennsylvania, Intervenor.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2012.

Decided Dec. 16, 2013.

54

56

Jeffrey Bryant Engle, Shaffer & Engle Law Offices, Millersburg, for Appellant.

Douglas Joseph Taglieri, Karen Byrnes-Noon, James Patrick Goodman, Schuylkill County District Attorney's Office, Pottsville, for Appellee.

Thomas Walter Dymek, Jonathan F. Bloom, Karl Stewart Myers, Stradley, Ronon, Stevens & Young, L.L.P., Philadelphia, for General Assembly of the Commonwealth of Pennsylvania, Intervenor.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

### *OPINION*

Justice TODD.

In this appeal, we consider whether Act 152 of 2004 ("Act 152"),[1] which makes various amendments to the Judicial Code,[2] violates the "single subject" rule of Article III, Section 3 of the Pennsylvania Constitution,[3] and, if so, whether the portions of Act 152 amending Pennsylvania's "Megan's Law" may be severed from the other provisions of Act 152 and remain in force. For reasons detailed at greater length herein, we conclude that Act 152 does violate Article III,

1. P.L. 1243 No. 152 (2004).

2. 42 Pa.C.S.A. §§ 101–9913.

3. Article III, Section 3 provides:
 § 3. **Form of bills**
 No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.
 Pa. Const. art. III, § 3.

Section 3, since its various provisions do not all relate to a single unifying subject. Further, we hold that the proper remedy for this violation of our Constitution is to strike Act 152 in its entirety. Accordingly, we reverse the order of the Superior Court, but stay our decision for 90 days.

## I. Background

We begin with a discussion of the legislative history of Act 152, as it is necessary to understand the basis of the constitutional questions at issue. The legislation which ultimately became Act 152 of 2004 originated in the Pennsylvania State Senate on January 29, 2003 with the introduction of Senate Bill 92 of 2003, P.N. 0091. ("S.B. 92, P.N. 91"). This eight-page bill had two sections amending Section 8103 of the Judicial Code, 42 Pa.C.S.A. § 8103, governing deficiency judgment procedures in the courts of common pleas after an execution sale of real property. The first section set a six-month statute of limitations for certain judgment creditors or debtors to file a valuation petition for real property purchased at an execution sale,[4] while the second section established, *inter alia*, deficiency judgment procedures when parcels of real property are located in more than one county.[5] This bill was passed by the Senate Judiciary Committee on February 11, 2003, and, thereafter, was considered by the full Senate three separate times, with final passage in the Senate occurring on March 5, 2003.

S.B. 92, P.N. 91 was then sent to the House of Representatives, and, after being approved by the House Judiciary Committee without amendment, it was considered twice by the full House. After the second consideration, S.B. 92, P.N. 91 was referred to the House Appropriations Committee, which re-reported it on July 15, 2003, without amendment, for final consideration by the full House. However, during its final consideration on the House floor, the bill was amended to add two sections, one creating a separate chapter in Title 42 to

4. S.B. 92, P.N. 1995 (2004) § 2, as enacted, 42 Pa.C.S.A. § 5522(6).

5. S.B. 92, P.N. 1995 (2004) § 5, as enacted, 42 Pa.C.S.A. § 8103(f.1) and 42 Pa.C.S.A. § 8103(g).

govern eviction proceedings between landlords and tenants, and another section amending the Municipal Police Jurisdiction Act to establish the jurisdiction of county park police in counties of the third class.[6] This altered legislation was redesignated S.B. 92, P.N. 1105. The full House voted to pass this version of the bill on July 15, 2003, and it was sent to the Senate for further consideration.

The bill remained in the Senate Rules Committee from July 17, 2003 until May 11, 2004, whereupon the committee made two alterations to the bill, changing its listing of sponsoring senators and changing the chapter and statutory designations for the proposed landlord/tenant act. The Rules Committee reported the altered version, now numbering 21 pages, to the full Senate as S.B. 92, P.N. 1614, which, in turn, recommitted it back to the Rules Committee on May 17, 2004.

After this recommitment, the bill underwent significant revision. Although the Rules Committee retained the aforementioned provisions related to deficiency judgments and county park police jurisdiction, it deleted all of the landlord-tenant chapters, redesignated the bill S.B. 92, P.N. 1995, and added 15 new sections—spanning 38 additional pages—which accomplished the following substantive legal changes: (1) established a two-year limitation for asbestos actions;[7] (2) amended the Crimes Code to create various criminal offenses for individuals subject to sexual offender registration requirements who fail to comply;[8] (3) amended the provisions of the Sentencing Code which govern "Registration of Sexual Offenders";[9] (4) added the offenses of luring and institutional sexual assault to the list of enumerated offenses which require a 10-year period of registration and established local police notification procedures for out-of state sexual offenders who move to

6. S.B. 92, P.N. 1995 (2004), § 6, as enacted, 42 Pa.C.S.A. § 8951.

7. S.B. 92, P.N. 1995 (2004), § 4, as enacted, 42 Pa.C.S.A. § 5524.1.

8. S.B. 92, P.N. 1995 (2004), § 1, as enacted, 18 Pa.C.S.A. § 4915 (effective 1/24/2005–12/31 /2006).

9. S.B. 92, P.N. 1995 (2004), § 7, as enacted, 42 Pa.C.S.A. § 9792 (effective 1/24/2005–2/20/2012).

60

Pennsylvania;[10] (5) directed the creation of a searchable computerized database of all registered sexual offenders ("database");[11] (6) amended the duties of the Sexual Offenders Assessment Board ("SOAB");[12] (7) allowed a sentencing court to exempt a lifetime sex offender registrant, or a sexually violent predator registrant, from inclusion in the database after 20 years if certain conditions are met;[13] (8) established mandatory registration and community notification procedures for sexually violent predators;[14] (9) established community notification requirements for a "common interest community"—such as a condominium or cooperative—of the presence of a registered sexually violent predator;[15] (10) conferred immunity on unit owners' associations of a common interest community for good faith distribution of information obtained from the database;[16] (11) directed the Pennsylvania State Police to publish a list of approved registration sites to collect and transmit fingerprints and photographs of all sex offenders who register at those sites;[17] and (12) mandated the Pennsylvania Attorney General to conduct annual performance audits of state or local agencies who participate in the administration of Megan's Law, and, also, required registered sex offenders to submit to fingerprinting and being photographed when

10. S.B. 92, P.N. 1995 (2004), § 8, as enacted, 42 Pa.C.S.A. §§ 9795.1(a)(1) (effective 1/24/2005–12/31/2006) and 9795.2 (effective 1/24/2005–12/31/2006).

11. S.B. 92, P.N. 1995 (2004), §§ 13, 18, as enacted 42 Pa.C.S.A. § 9798.1 (effective 1/24/2005–11/8/2006) and 9798.2 (effective 1/24/2005–11/19/2012).

12. S.B. 92, P.N. 1995 (2004), § 9, as enacted, 42 Pa.C.S.A. § 9795.4 (effective 1/24/2005–5/28/2007).

13. S.B. 92, P.N. 1995 (2004), § 10, as enacted, 42 Pa.C.S.A. § 9795.5 (effective 1/24/2005–2/20/2012).

14. S.B. 92, P.N. 1995 (2004), §§ 11, 17, as enacted, 42 Pa.C.S.A. § 9796 (effective 1/24/2005–2/20/2012).

15. S.B. 92, P.N. 1995 (2004), § 12, as enacted, 42 Pa.C.S.A. § 9798 (effective 1/24/2005–2/20/2012).

16. S.B. 92, P.N. 1995 (2004), § 14, as enacted, 42 Pa.C.S.A. § 9799 (effective 1/24/2005–12/19/2012).

17. S.B. 92, P.N. 1995 (2004), § 15, as enacted, 42 Pa.C.S.A. § 9799.1 (effective 11/24/2004–12/19/2011).

registering at approved registration sites.[18] S.B. 92, P.N. 1995 was reported out of the Rules Committee on November 19, 2004 and approved by the full Senate that same day.

S.B. 92, P.N. 1995 was sent to the House on November 20, 2004, and that body voted to approve it on that date. The bill was sent to then-Governor Rendell who signed it on November 24, 2004, at which time it became Act 152 of 2004.[19]

Appellant's criminal prosecution giving rise to this appeal originated after Act 152 became law, and its provisions were applied by the trial court therein. In October 2005, Appellant was arrested for various sexual offenses against two young girls—ages 7 and 10—committed over a two-year period from 2003–2005.[20] Appellant proceeded to a jury trial on those charges and was convicted on March 8, 2007, after which the trial court ordered Appellant to be assessed by the SOAB. On July 2, 2007, Appellant's counsel filed a motion raising a number of challenges under the federal and state constitution to the sexually violent predator portions of the version of Megan's Law in effect prior to the passage of Act 152— "Megan's Law II"[21]—which he contended was applicable to his case. At his sentencing hearing, the trial court entertained argument on this motion, rejected all of Appellant's constitutional attacks, and sentenced him to an aggregate sentence of 13½ to 27 years imprisonment. The trial court further ruled that Appellant was a sexually violent predator and, thus, the sex offender registration and reporting provisions of Act 152 applied to him.[22]

**18.** S.B. 92, P.N. 1995 (2004), § 16, as enacted 42 Pa.C.S.A. 42 Pa. C.S.A. §§ 9799.8 (effective 5/23/2005–12/19/2012), and 9799.9 (effective 1/24/2005–12/19/2012).

**19.** The parties and the lower courts have variously referred to this final legislation as S.B. 92, Act 152, and Megan's Law III. For ease of discussion we will hereinafter refer to this legislation as Act 152.

**20.** These offenses included aggravated indecent assault, indecent assault, endangering the welfare of children, corruption of minors, and indecent exposure.

**21.** Act of May 10, 2000, P.L. 74, No. 18, *as amended,* 42 Pa.C.S. §§ 9791–9799.9, (repealed and replaced).

**22.** In making this ruling, the trial court relied on the Superior Court's rulings in *Commonwealth v. Hitner,* 910 A.2d 721 (Pa.Super.2006) and

Appellant filed a timely notice of appeal, and he was directed by the trial court to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In this statement, Appellant again raised a panoply of constitutional challenges to both Megan's Law II and Act 152, including a claim that the legislature's passage of Act 152 violated Article III, Section 3 of the Pennsylvania Constitution because it contained multiple topics which were not germane to a single subject. Statement of Matters Complained of on Appeal, 11/7/07, at ¶¶ 13, 14. The trial court rejected this claim, finding that "the provisions of [Act 152] are sufficiently related and germane to a single subject, the amendments of [Title 42]." Trial Court Opinion, 12/11/07, at 14.

On appeal to the Superior Court, that tribunal deemed Appellant's Article III, Section 3 challenge sufficiently important to certify for *en banc* review, and, ultimately, ruled, in a 7–2 decision authored by then-President Judge Ford Elliott,[23] Act 152 violated Article III, Section 3. *Commonwealth v. Neiman*, 5 A.3d 353 (Pa.Super.2010). In reaching its decision, the court extensively discussed our Court's rulings in *City of Philadelphia v. Com.*, 575 Pa. 542, 838 A.2d 566 (2003) (*"City of Philadelphia"*) (holding that, in order to ascertain whether legislation violates Article III, Section 3, the various provisions added during the legislative process must be examined to determine if they are germane to the overarching subject of the legislation) and *Pennsylvanians Against Gambling Expansion Fund Inc. v. Com.*, 583 Pa. 275, 877 A.2d 383 (2005) (*"PAGE"*) (concluding that the majority of the provisions of the Gaming Act did not violate single subject rule of Article III, Section 3, since they were germane to one subject—the regulation of gaming; however, provisions that were not germane to the subject of gaming were stricken). Pursuant to the principles articulated in these cases, the court reviewed

*Commonwealth v. Benner,* 853 A.2d 1068 (Pa.Super.2004) which held that the version of Megan's Law in effect while a defendant is in custody on any part of a sentence for a sex offense covered by that version applies.

**23.** Judge Ford Elliott was joined in her decision by Judges Stevens, Panella, Shogan, Allen, and Mundy.

the multiple provisions of Act 152 and, based on its observations that the provisions amending Megan's Law were both the first and last sections of the law, comprising almost 60% of its total pages, determined that the focus of Act 152 was those amendments. The court opined that there was "little relationship" between the amendments to Megan's Law and the provisions of Act 152 amending the deficiency judgment statutes, nor, in the court's view, was there any apparent way to harmonize the other subjects of the bill involving the establishment of statutes of limitations and county police jurisdiction. *Neiman*, 5 A.3d at 359. The court rejected the trial court's suggested unifying subject of "amendments to Title 42," since it regarded *PAGE* as establishing that, merely because unrelated subjects in a bill affect one statutory title, this has "little constitutional importance in regard to the single subject rule." *Neiman*, 5 A.3d at 358–59. The court also dismissed the Commonwealth's suggested topic of "civil remedies," on the basis that such a proposed subject was too broad. Consequently, the court concluded that Act 152 violated the single subject mandate of Article III, Section 1.

Nevertheless, the Superior Court did not strike down Act 152 in its entirety. Instead, the court noted that, in *PAGE*, our Court voided only the provisions of the Gaming Act that were not germane to the subject of gambling, and, also, that Section 1925 of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1925,[24] allows a court to sever provisions of a statute which it deems unconstitutional if they are not "essen-

24. Section 1925 states:

The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S.A. § 1925.

tially and inseparably connected." *Neiman,* 5 A.3d at 359. The court reasoned that, since there was a single unifying subject of Act 152 to which the majority of its various provisions were germane—"the regulation of sexual predators"— those provisions could remain intact, while its other extraneous unrelated provisions could be stricken pursuant to *PAGE* and Section 1925. *Neiman,* 5 A.3d at 360. Finding the remainder of Appellant's claims raised in his appeal to be meritless, the court affirmed Appellant's judgment of sentence.

Judge Donohue authored a concurring and dissenting opinion joined by Judge Lazarus.[25] She opined that Appellant had waived his Article III, Section 3 claim for what she deemed to be a failure to properly develop his argument regarding this issue in his brief. She also expressed her concern that the Court's decision to sever the other provisions of the statute, rendering them void, would impact individuals who did not have a chance to present advocacy as to whether those provisions should be preserved, inasmuch as the parties to the appeal had little incentive to advocate on their behalf.

Following the issuance of the Superior Court's decision, the General Assembly applied to the Superior Court for permission to intervene for the purpose of defending the constitutionality of Act 152, in its entirety, and for an emergency stay of the court's decision. In response, the Superior Court granted the General Assembly Intervenor status, and issued a stay of its decision.

Subsequently, Appellant petitioned for allowance of appeal, which we granted. *See Commonwealth v. Neiman,* 611 Pa. 419, 27 A.3d 984 (2011) (order). Thereafter, the General Assembly applied to our Court seeking a continuation of the stay of the Superior Court's decision, and we issued an order on October 31, 2011 granting this request and extending the stay of the Superior Court's decision until further order of our Court.[26]

---

**25.** Judge Gantman concurred in the result.

**26.** Justice Baer authored a concurring statement to this order, joined by Justice McCaffery, in which he questioned the propriety of the grant

## II. Single Subject Rule of Article III, Section 3

We begin by addressing the question of whether Act 152 violates Article III, Section 3 of the Pennsylvania Constitution.[27] Appellant, reciting the extensive transformation and expansion of Act 152 during the legislative process described above, argues that its various final provisions amending Megan's Law, deficiency judgment procedures, county park police jurisdiction, and the statute of limitations for asbestos claims "have no unifying relationship such that they can be brought into a common focus." Appellant's Brief at 27 (citing *PAGE*, 583 Pa. at 296, 877 A.2d at 395–96). Appellant notes that the Superior Court also could discern no substantial relationship between the dissimilar topics of these amendments. Appellant analogizes Act 152 to the legislation struck down by our Court in *City of Philadelphia*, which, likewise, significantly expanded from its initial form to final passage to include a wide variety of divergent topics. Appellant contends that this lack of germaneness of Act 152's differing provisions to a single subject renders the entirety of the act violative of Article III, Section 3.

Appellee, the Commonwealth,[28] responds by highlighting the fact that each of the provisions of Act 152 offer civil remedies.

of Intervenor status to the General Assembly, since our Court has previously determined that legislators do not have standing to raise a claim in a legal proceeding that the effectiveness of a law which they have passed was impaired by a judicial decision, *see Fumo v. City of Philadelphia*, 601 Pa. 322, 972 A.2d 487 (2009), and impairment of the operation of Act 152 was the basis on which the General Assembly requested intervention. However, Justice Baer noted that no challenge to the General Assembly's standing was raised by either Appellant or the Commonwealth, and, since our Court has declined to address the issue of a party's standing *sua sponte, see Rendell v. Pennsylvania State Ethics Comm'n*, 603 Pa. 292, 983 A.2d 708 (2009), there was no basis to preclude the General Assembly's participation in this matter.

27. In his brief, Appellant raises additional challenges to Act 152 based on Article III, Sections 1 and 4 of the Pennsylvania Constitution; however, since Appellant, by his own admission, did not raise these violations in the proceedings below, *see* Appellant's Brief at 14, nor are they within the scope of our grant of allocatur, they are waived, and we will not address them. *Commonwealth v. Diodoro*, 601 Pa. 6, 13 n. 5, 970 A.2d 1100, 1104 n. 5 (2009).

28. The Commonwealth is represented in this appeal by the District Attorney of Schuylkill County.

Specifically, it notes that the Megan's Law amendments provide a civil remedy to the Commonwealth by allowing monitoring of sexually violent offenders. The deficiency judgment and asbestos claim sections establish time periods and procedures for civil suits seeking relief, and the portion delineating the jurisdiction of county police expands civil remedies by allowing officers acting outside of this established jurisdiction to be potentially subjected to lawsuits for their actions. The Commonwealth thus posits that all of these provisions are germane to the single subject of "refining civil remedies," and, as a result, Appellant cannot carry his heavy burden of proof to overcome the presumption of the act's constitutionality. Commonwealth Brief at 4.

The General Assembly argues that Act 152 complies with Article III, Section 3 since all of its provisions relate to the "single subject of judicial remedies and sanctions." Brief of the General Assembly at 8. The General Assembly posits that the Megan's Law amendments imposing the public registration obligation are remedial, and so too are the deficiency judgment procedures and the statute of limitations provision for asbestos-related claims, since both establish set processes by which litigants can pursue judicial remedies. The General Assembly asserts that the portions of Act 152 setting county park police jurisdiction are related to the Megan's Law amendments because municipal police are sometimes called upon to participate in the administration of the provisions of Megan's Law, as they are the recipients of information from the state police regarding the address of the residence, place of employment or school of registered sex offenders and must also provide notifications to the public regarding the presence of a sexually violent predator in their neighborhood.

In addition, the General Assembly suggests that, because Act 152 has been law for over seven years, there would be negative practical ramifications from invalidating it. According to the General Assembly, the following specific consequences would purportedly ensue: (1) corporations beset by asbestos claims due to mergers and consolidations would, once more, face, "crippling potential liabilities" from such claims;

(2) "widespread uncertainty" would be created in the real estate market due to the invalidation of the deficiency judgment procedures established by Act 152 and the prospect of past valuation judgments being called into question; and (3) convictions obtained from arrests and evidence seized by county park police acting under the jurisdiction conferred on them by Act 152 would be vulnerable to attack. Brief of the General Assembly at 10–11. For all of these reasons, the General Assembly asks that we uphold Act 152 in its entirety.[29]

In conducting our review, we are guided by the principle that "acts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed." *Pennsylvania State Ass'n of Jury Comm'rs v. Com.*, 64 A.3d 611, 618 (Pa.2013). Thus, a statute will not be found unconstitutional "unless it clearly, palpably, and plainly violates the Constitution." *Id.* If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality. *Id.*

As our Court has emphasized, the single subject rule of Article III, Section 3 was first included by the framers of our Commonwealth's organic charter in 1864, and then readopted as part of the 1874 Constitution, in order to effectuate "the

**29.** The General Assembly also asserts that Appellant's Article III, Section 3 claim is waived since he did not adequately develop his argument with respect thereto in his brief with the Superior Court. We note, however, that the Commonwealth does not make such an argument. Further, as developed above, the adequacy of the advocacy in Appellant's brief to the Superior Court regarding his Article III, Section 3 claim was considered by that tribunal, as it was the principal basis of Judge Donohue's dissenting opinion; however, the Superior Court majority evidently did not consider the alleged deficiency in Appellant's advocacy to be an impediment to their review, as they proceeded to address its merits. Because our subsequent grant of allocatur from that decision did not encompass any issue regarding Appellant's alleged waiver of his Article III, Section 3 claim in the Superior Court we will not presently consider the General Assembly's argument related thereto. *See Commonwealth v. McMullen*, 599 Pa. 435, 453, 961 A.2d 842, 853 (2008) (Commonwealth's assertion to our Court that appellee had waived claim in proceedings below would not be considered by our court since it was not the subject of our grant of review).

electorate's overall goal of curtailing legislative practices that it viewed with suspicion." *City of Philadelphia,* 575 Pa. at 574, 838 A.2d at 586. In particular, there were two legislative practices the framers and the electorate sought to eliminate with their adoption of Article III, Section 3. The first involved the insertion into a single bill of a number of distinct and independent subjects of legislation in order to deliberately hide the real purpose of the bill. *PAGE,* 583 Pa. at 295, 877 A.2d at 395. The second was the practice of "logrolling" which involves "embracing in one bill several distinct matters, none of which could singly obtain the assent of the legislature, and procuring its passage by combining the minorities who favored the individual matters to form a majority that would adopt them all." *City of Philadelphia,* 575 Pa. at 575, 838 A.2d at 586.

Our Court has additionally observed that Article III, Section 3 serves other salutary purposes furthering the efficiency of the legislative process. The requirement that each piece of legislation pertain to only one subject creates a greater likelihood that it will receive a more considered and thorough review by legislators than if it is aggregated with other pieces of legislation pertaining to different topics into a singular "omnibus bill," thereby creating a "jumbling together of incongruous subjects." *See Hosp. and Healthsystem Ass'n of Pennsylvania v. DPW,* 585 Pa. 106, 118, 888 A.2d 601, 608 (2005) (quoting *Commonwealth v. Barnett,* 199 Pa. 161, 172, 48 A. 976, 977 (Pa.1901)). Additionally, and significantly, "the single subject requirement proscribe[s] the inclusion of provisions into legislation without allowing for 'fair notice to the public and to legislators of the existence of the same.'" *PAGE,* 583 Pa. at 295, 877 A.2d at 395. It, thus, provides a vital assurance to residents of this Commonwealth that they will be able to make their views and wishes regarding a particular piece of legislation known to their duly elected representatives **before** its final passage, and it concomitantly ensures that those representatives will be adequately apprised of the full scope and impact of a legislative measure before being required to cast a vote on it.

Accordingly, our Court has interpreted Article III, Section 3 as mandating that a final bill enacted by the General Assembly meet two specific criteria: "First, the title of the bill must clearly express the substance of the proposed law.... Second, the differing topics within the bill must be 'germane' to each other." *Jury Comm'rs*, 64 A.3d at 616. Presently, Appellant does not assert that the title of Act 152 does not adequately give notice of its contents; rather, the crux of his challenge is that Act 152 did not meet the second portion of this test, i.e., that the various subjects of Act 152 were not germane to a single subject.

In determining "germaneness," our Court has acknowledged that some degree of deference to the General Assembly's prerogative to amend legislation is required, due to the normal fluidity inherent in the legislative process, and, thus, we have deemed it is appropriate for a reviewing court to hypothesize a "reasonably broad topic" which would unify the various provisions of a final bill as enacted. *City of Philadelphia*, 575 Pa. at 577, 838 A.2d at 588. However, our Court has also stressed the "reasonable" aspect of any proposed hypothetical unifying topic, in recognition of the fact that Article III, Section 3 would be rendered nugatory if such hypothetical topics were too expansive. *PAGE*, 583 Pa. at 296, 877 A.2d at 395. We observed that, "no two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough." *Id.* (quoting *Payne v. Sch. Dist. of Coudersport*, 168 Pa. 386, 31 A. 1072 (1895)). Consequently, in determining whether a proposed unifying subject is sufficiently narrow so as to pass muster under Article III, Section 3, our Court must examine the various subjects contained within a legislative enactment and determine whether they have a nexus to a common purpose. Stated another way, our task is to ascertain whether the various components of the enactment are part of "a unifying scheme to accomplish a single purpose." *City of Philadelphia*, 575 Pa. at 579, 838 A.2d at 589 (citing *Payne* ).

70

In this regard, the mere fact that a piece of legislation amends a particular title of the Pennsylvania Consolidated Statutes, as in *City of Philadelphia*, or amends a particular article of a codified body of statutes such as the County Code, like the legislation in *Jury Comm'rs*, will not automatically fulfill the requirements of Article III, Section 3, as our rulings in those cases established. Thus, in the case at bar, the Superior Court properly determined that, merely because all of the various components of Act 152 amended "Title 42," this does not establish its compliance with Article III, Section 3.

Likewise, the proposed unifying subjects for Act 152 offered by the Commonwealth ("refining civil remedies or relief") and the General Assembly ("judicial remedies and sanctions") are far too expansive to satisfy Article III, Section 3, as such subjects are virtually boundless in that they could encompass, respectively, **any** civil court proceeding which could be brought in the courts of this Commonwealth, and **any** power of the judiciary to impose sanctions on, or order the payment of damages by, a party to civil litigation. We therefore decline to endorse such broad suggested topics, as they would have the effect of "render[ing] the safeguards of [Article III,] Section 3 inert." *PAGE*, 583 Pa. at 296, 877 A.2d at 395.

Further, upon considered reflection, we cannot discern any other common nexus for the myriad disparate provisions of Act 152, inasmuch as we can see no reasonable basis under which deficiency judgment procedures, asbestos statutes of limitations, county police jurisdiction, and sexual offender registration requirements act together as "a unifying scheme to accomplish a single purpose." *City of Philadelphia*. Because there is simply no common focus to all of Act 152's provisions, this case presents a situation akin to that which existed in our decisions in *City of Philadelphia* and *Jury Comm'rs*, in which we rejected, in turn, the proposed unifying subjects of "municipalities" and "powers of county commissioners" as being too broad, and, thus, violative of the single subject rule. As a result, we are constrained to conclude that Act 152 clearly, palpably, and plainly violates Article III,

Section 3 of the Constitution and, consequently, we affirm the Superior Court's ruling in this regard.

### III. Severability

 Having determined that the Superior Court properly determined that Act 152 violates Article III, Section 3, we next consider the question of whether it was appropriate for that tribunal to sever the amendments to Megan's Law from the remaining portions of Act 152. Appellant argues that our *PAGE* decision established that, in order to determine the severability of provisions of legislation which violates Article III, Section 3, a reviewing court should examine whether the legislation contains an internal severability provision, and when, as here, it does not, the court must then determine the primary purpose of the bill and consider whether the other portions of the bill are extraneous to that purpose. Appellant proffers that the primary purpose of the initial bill introduced—Senate Bill 92—which ultimately became Act 152, was to amend deficiency judgment procedures and not to amend Megan's Law. Appellant stresses that the Megan's Law provisions were only introduced as **final** amendments to the initial bill and, then, considered only once by both houses. Appellant disputes the Superior Court's conclusion that, because the greatest number of pages of the total legislation were devoted to the Megan's Law amendments, those amendments should be considered the primary purpose of Act 152. Appellant asserts that adopting this rationale would allow the legislature to violate the fundamental purpose of Article III by sanctioning the practice of adding a larger piece of legislation to a much smaller one during the legislative process. Appellant therefore asks that our Court invalidate Act 152 in its entirety, or, alternatively, to sever the Megan's Law amendments from the other provisions added earlier in the legislative process.

The Commonwealth contends that, unless the valid provisions of a particular piece of legislation are essential, inseparably connected to, or dependent on other portions of the legislation which are unconstitutional, the unconstitutional portions should be severed. Commonwealth Brief at 5 (quoting

*PAGE* and 1 Pa.C.S.A. § 1925). The Commonwealth maintains that the Megan's Law provisions are not essentially or inseparably connected with any of the other portions of Act 152, and, also, that they can operate independently of the other provisions. Hence, the Commonwealth requests the Megan's Law amendments be severed and sustained by our Court.

The General Assembly echoes Appellant's position that the Superior Court's focus on the number of pages of Act 152 occupied by the Megan's Law amendments was erroneous. The General Assembly argues that the Superior Court's error stemmed from its reliance on our *PAGE* decision. According to the General Assembly, the Superior Court should have looked to our decision in *City of Philadelphia* where our Court did not count the pages of the respective portions of the legislation at issue, but, finding an Article III, Section 3 violation, struck all of it down due to the fact we viewed the picking and choosing of which provisions to save and which to strike as an indiscriminate exercise.

The General Assembly distinguishes *PAGE* from the instant matter by noting what it considers key differences, specifically that the main substantive legislation at issue in *PAGE*—the Gaming Act—contained an express severability clause, and the few provisions of that act which our Court struck down dealt with the very narrow question of whether special funds created by the legislature, which were funded by the Gaming Act, violated Article III, Section 3. The General Assembly also raises separation of powers concerns, and cautions against our Court's undertaking of an essentially legislative function by engaging in the weighing of competing policies in order to decide which portions of legislation to keep, particularly whenever there is nothing to support the conclusion that the General Assembly would have enacted this legislation without the stricken portions, and nothing to indicate that our Court's choice of certain retained portions would be consistent with the General Assembly's intent in enacting the legislation. The General Assembly asserts that "this Court should not sever any aspect of Act 152 [,and] [i]f Act 152 is found to violate

Article III, Section 3, then [it] should be treated as unconstitutional in its entirety." Brief of the General Assembly at 16.

Our Court has observed that "[i]n determining the severability of a statute ... the legislative intent is of primary significance." *State Bd. of Chiropractic Examiners v. Life Fellowship of Pa.*, 441 Pa. 293, 299, 272 A.2d 478, 481 (1971). However, such a determination of legislative intent becomes problematic where, as here, a piece of omnibus legislation contains a multiplicity of disparate subjects, and the subjects are enumerated within its title. In such circumstances, it is difficult for a reviewing court to parse, from the various subjects comprising the omnibus legislation, a "main" purpose for it, as the facts of the instant case illustrate.

It is true that, in terms of raw page numbers, a significant portion of Act 152 was comprised of the Megan's Law amendments; however, this fact alone does not support the Superior Court's conclusion that these amendments were the main purpose of the bill. These amendments were inserted *in toto* at the very end of the amendatory process and just before Act 152 was voted on by both houses of the General Assembly. By contrast, the other provisions relating to deficiency judgments were the sole subjects of the legislation which became Act 152 at its inception, and they remained in all subsequent versions until final passage; hence, an equally plausible argument can be made that this continuity of inclusion of these provisions by the General Assembly in all versions of the legislation which became Act 152, evidences its primary focus on having these provisions become law. Thus, this underscores the reality that discerning the "main" purpose of a piece of legislation becomes an untenable exercise in conjecture when the legislation has metamorphosed during the legislative process to include a panoply of additional and disparate subjects.

Furthermore, the Superior Court's decision to apply 1 Pa.C.S.A. § 1925 and sever the Megan's Law amendments from the other portions of Act 152 was not a suitable course of action in these circumstances. When an act of the legislature

violates the single subject rule, all of its provisions are equally repugnant to the constitution, and, thus, equally void; so there is no basis to distinguish among the act's various sections to decide which of them offend the constitution to a greater or lesser degree. As we recognized in *City of Philadelphia*, "it would be arbitrary to preserve one set of provisions germane to one topic, and invalidate the remainder of the bill." *City of Philadelphia*, 575 Pa. at 586, 838 A.2d at 593.[30] As cogently observed by the late Professor Millard H. Ruud of the University of Texas School of Law, a recognized authority on the subject of legislation:

> The one subject rule is not concerned with substantive legislative power. It is aimed at log-rolling. It is assumed, without inquiring into the particular facts, that the unrelated subjects were combined in one bill in order to convert several minorities into a majority. The one-subject rule declares that this perversion of majority rule will not be tolerated. The entire act is suspect and so it must all fall.

Ruud, Millard H., *No Law Shall Embrace More Than One Subject*, 42 Minn. L. Rev. 389, 399 (1958) (footnotes omitted).

In sum then, for all of these reasons, we find Act 152 to be akin to the sprawling omnibus measure we struck down in *City of Philadelphia* as violative of Article III, Section 3, rather than like the minor ancillary statutory provisions which we severed in *PAGE*. We therefore reverse the decision of the Superior Court and declare Act 152 unconstitutional in its entirety. We stress, however, that this action should, in no way, be read as a repudiation of the merits of the various legislative components of Act 152 such as Megan's Law III,

---

**30.** The task faced by a reviewing court, in selecting which portions of legislation violating the single subject rule of a state constitution to keep and which to void, was eloquently analogized by Justice Douglas of the Ohio Supreme Court to the futile exercise of attempting to ascertain whether the filling of the last third of a container, already two thirds full of skim milk, with whole milk resulted in the skim milk or the whole milk being contaminated by the blending. As Justice Douglas aptly noted, such intermixing alters both substances irrevocably and also contaminates both. *See State, ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 580 N.E.2d 767 (1991) (Douglas, J. dissenting).

which serves a vital purpose in protecting our Commonwealth's citizens and children, in particular, from victimization by sexual predators.[31] Rather, we undertake this serious action in order to fulfill one of our obligations under our Constitution to "[review] Article III procedural challenges, and strik[e] down legislation which clearly and palpably violates the Constitution." *Stilp v. Com.*, 588 Pa. 539, 597 n. 29, 905 A.2d 918, 952 n. 29 (2006).

Nevertheless, as we have observed previously in striking down other legislation which violated Article III, Section 3, "nothing ... precludes the General Assembly from enacting similar provisions in a manner consistent with the Constitution." *City of Philadelphia*, 575 Pa. at 587, 838 A.2d at 594. However, since we find merit in the General Assembly's suggestion that our decision abrogating the entirety of Act 152 will have a significant impact on a wide variety of individuals and entities which have ordered their affairs in reliance on its provisions, we will stay our decision, as we have done under similar circumstances, in order to provide a reasonable amount of time for the General Assembly to consider appropriate remedial measures, or to allow for a smooth transition period. *See City of Philadelphia*, 575 Pa. at 587, 838 A.2d at 594.

Accordingly, the order of the Superior Court is hereby reversed and the entirety of Act 152 is stricken as violative of Article III, Section 3 of our Constitution. Our decision is stayed for 90 days. Jurisdiction retained.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justices SAYLOR, EAKIN, BAER, and McCAFFERY join the opinion.

Chief Justice CASTILLE files a dissenting opinion.

**31.** Our decision affects only the version of Megan's Law challenged by Appellant—Megan's Law III. The legislature has subsequently repealed and reenacted various portions of that law which took effect on December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10–9799.41.

Chief Justice CASTILLE, dissenting.

The Majority Opinion provides a reasonable analysis of the constitutional issue presented herein. Nevertheless, while I find the question of single subject legislation to be close, I respectfully believe that the Act in question is not so clearly, plainly and palpably unconstitutional that the presumption of constitutionality attending its passage has been defeated. Hence, I respectfully dissent. My reasons follow.

The Majority holds that Act 152 of 2004 violates Article III, Section 3 of the Pennsylvania Constitution—referred to as the "single-subject rule." *See* PA. CONST. art. III, § 3; Act 152 of November 24, 2004, Pub. Law 1243 (effective in 60 days [Jan. 24, 2005] ). Arguing separately in defense of the Act, the Commonwealth and the General Assembly collectively identify the sufficient unifying principle to be "refining civil remedies or relief" or "judicial remedies and sanctions." According to the Majority, such a unifying subject of Act 152 is far too expansive to satisfy constitutional requirements. Specifically, the Majority concludes that "refining civil remedies or relief" and "judicial remedies and sanctions" are virtually boundless categories that could embrace any court proceeding and any type of sanction or damages awarded against a party in civil litigation. The Majority also holds that the provisions of Act 152 do not share the common nexus necessary to meet the single-subject rule.

Mindful of the highly deferential nature of our review, I would hold that the various provisions of Act 152 are germane to the subject of refining civil remedies, a category that is sufficiently narrow for the purposes of the single-subject rule. Thus, in my view, the law, as enacted by the General Assembly, does not violate Article III, Section 3 of the Pennsylvania Constitution.

Initially, I recognize that the general purpose of Article III is to encourage open, deliberative, and accountable government by placing procedural restraints on the legislative process. The provision was born of a desire to curb prior legislative abuses. Thus, one of the purposes that Section 3 of

Article III serves is to restrain "log-rolling" in its several forms, including the practice of drafting one bill whose passage is procured by combining several distinct minority-supported matters to form a majority that would adopt them all, or the practice of attaching to a popular bill certain to pass riders that would not become law standing on their own. *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566, 586 (2003). To some degree, however, any law passing through the enactment process is the result of salutary legislative compromise and the single-subject rule is not intended to completely discourage such compromise. The dangers that Article III, Section 3 seeks to avoid are the passage of intentionally disguised or hidden legislation, of legislation that serves special interests and does not reflect the will of the majority, as expressed through their elected representatives. "Also, a bill addressing a single topic is more likely to obtain a considered review than one addressing many subjects." *Id.*

Striking the balance between fidelity to the intent and purpose of Article III, Section 3 and allowing legislative processes to operate reasonably unimpeded has proven complicated. As the Court described in *City of Philadelphia*, Article III, Section 3 jurisprudence has undergone a certain ebb and flow since the beginning of the Twentieth Century. 838 A.2d at 587–88. In more recent expressions, the Court has recognized that, to have meaning, procedural limitations such as those in Section 3 of Article III must set reasonable restrictions on the breadth of topics covered in a bill "as otherwise virtually all legislation, no matter how diverse in substance, would meet the single-subject requirement." *Id.* at 588 (citing *Payne v. Sch. Dist. of Borough of Coudersport*, 168 Pa. 386, 31 A. 1072, 1074 (1895) (per curiam)); *see also Pa. State Ass'n of Jury Comm'rs v. Commonwealth*, 619 Pa. 369, 64 A.3d 611, 619 (2013) (*"Jury Commissioners "*). But, to be reasonable, the restrictions must also include sufficient flexibility to avoid "pedantic" management of the General Assembly's labors and permit efficiency and compromise in the legislative process. *See, generally, In re Commonwealth, Dep't of Transp.*, 511 Pa. 620, 515 A.2d 899, 902 (1986).

The General Assembly notes that the Court's decision in *City of Philadelphia*, as refined further in *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383 (2005) (*"PAGE"*), created stability and predictability in this area of law. The standard from those cases allows for a reasonably broad approach to the single-subject rule. Thus, in recent application of the rule, the Court held that "municipalities" and "powers of county commissioners" are subjects too broad, while "gaming" is a suitable topic. *See Jury Comm'rs, supra; PAGE, supra; City of Philadelphia, supra.* The Court was not speaking in absolutes, of course, regarding the breadth of these subjects; its conclusions were specific to the nature of the provisions which the topic purportedly encompassed within the statutes under review. As in other areas, this Court's decisions address matters specifically before the Court. Affected parties then incorporate—directly and by analogy—the principles expressed into their subsequent affairs. *Cf. Scampone v. Highland Park Care Ctr., LLC*, 618 Pa. 363, 57 A.3d 582, 599 (2012) (causes of action at common law "evolve[ ] through either directly applicable decisional law or by analogy"). This Court's decisions in cases involving constitutional restrictions upon the legislative process result, in some ways, in a dialogue with the General Assembly. By this, I mean that the General Assembly properly may approach its task mindful of the Court's interpretation of the governing provisions. These cases create expectations and reliance interests regarding what may be constitutionally permissible or seemingly permitted by Court precedence. The Court must tread carefully when confronted with reliance interests on settled jurisprudence; "such reliance should not be undercut except for good reason." *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918, 967 (2006).[1]

---

1. The legislative reliance interest is tempered, of course, by the fact that the Court cannot be said to have approved or encouraged practices that were not embraced in the actual holdings of our cases. *See Stilp*, 905 A.2d at 967–68 & n. 35 ("As a matter of law, [the prior decision] rejected only the constitutional challenge and argument it identified as having been presented to it; no case purports to reject all possible arguments. In assessing the persuasiveness of a prior decision, a later

In light of these considerations, while I find the question to be exceedingly close, I do not believe that Act 152 clearly, plainly and palpably violates the single subject restriction. Initially, I accept the explanations of the Commonwealth and of the General Assembly that refinement of civil remedies, in the present context, is a sufficiently narrow legislative topic. The topic encompasses a manageable category of issues selected for inclusion and outlined in the Judicial Code. That the law amends primarily one title is not, of course, dispositive of the inquiry—as the Majority concludes also. Nevertheless, this fact is relevant to our inquiry because the very reason Pennsylvania laws are consolidated within the same title is because they generally have some close kinship. Moreover, it is not beyond cavil that the General Assembly would seek to remedy perceived gaps within the topic of statutory civil remedies at one time, via the same statute, for the purposes of efficiency and in order to ensure consistency. I recognize that the issue of refining civil remedies may not be as narrow as "gaming" was in the context of the Court's decision in *PAGE*, but, at least in my view, neither is it as broad as the topic of "municipalities" was in the context of the decision in *City of Philadelphia* or the topic of "powers of county commissioners" was in the context of the decision in *Jury Commissioners*. Thus, in *City of Philadelphia*, the Court held that the subject of "municipalities" was too broad where used to describe provisions as different as restricting the political activities of police officers; authorizing parking authorities to undertake mixed-use development projects; imposing a citizenship requirement for board members of business improvement districts; transferring authority over Philadelphia's taxis and limousines from the Public Utility Commission to the Philadelphia Parking Authority; repealing Section 209(k) of the Penn-

court necessarily is confined to the arguments and discussion which are identified in the decision."); *Holt v. 2011 Legislative Reapportionment Comm'n*, 614 Pa. 364, 38 A.3d 711, 736–37 (2012) (appealed redistricting plan was "not insulated from attack by decisions of th[e] Court finding prior redistricting plans constitutional, unless a materially indistinguishable challenge was raised and rejected in those decisions;" Court's language must be read against legal question at issue and operative facts).

sylvania Intergovernmental Cooperation Authority Act; and authorizing municipalities to hold gifts in trust. 838 A.2d at 589. In *Jury Commissioners*, the Court held that the subject "powers of county commissioners" was defined too broadly where it included permitting certain counties to abolish the office of jury commissioner; authorizing imposition of an excise tax on the rental of motor vehicles by counties of the first class; providing for regional renaissance initiatives; and creating procedures for commissioners of counties of the third through eighth class to sell personal property and surplus farm products. 64 A.3d at 613 n. 1. Meanwhile, the topic of "gaming" was deemed appropriate by the unanimous Court in *PAGE*, where it included creation of the Gaming Control Board; establishment of policies and procedures for gaming licenses for the installation and operation of slot machines; provisions to assist Pennsylvania's horse racing industry through other gaming; and provisions for administration and enforcement of the gaming law. 877 A.2d at 396.

Act 152 has nineteen sections; of these, Sections 2 and 5 add a period of limitations for the commencement of a civil action to the procedure for execution of deficiency judgments otherwise addressed in Sections 8103 and 5522 of the Judicial Code, and amend Section 8103 to address primarily deficiency judgments in relation to collateral located in more than one county. *See* 42 Pa.C.S. §§ 8103, 5522. Sections 3 and 4 delete and add, respectively, a period of limitations for the commencement of a civil action to the procedure for recovering damages for injury caused by exposure to asbestos. *See* 42 Pa.C.S. §§ 5524, 5524.1. Section 6 amends the definition of "primary jurisdiction," in relation to police officers. *See* 42 Pa.C.S. § 8951. Finally, Sections 1 and 7 through 19 amend Megan's Law registration requirements—a civil regulatory scheme—and create criminal sanctions to enforce the requirements of that regulatory scheme. The Megan's Law provisions address registration requirements, assessment, verification, and notification procedures, and distributions of responsibility for the administration of the Megan's Law notification system. *See* 42 Pa.C.S. §§ 9792, 9795.1–9795.2,

9795.4–9795.5, 9796, 9798, 9798.1, 9799, 9799.1, 9799.7–9799.9; 18 Pa.C.S. § 4915.

On the available spectrum, I find that the question of refining civil remedies, as defined in the present case, certainly is broad, but not unreasonably so, particularly in view of our precedent. All nineteen provisions of Act 152 amend aspects of existing categories of civil remedies, remedies that are already part of the Judicial Code. The Judicial Code supplies the outside parameters for which judicial remedies and what aspects of these remedies the statute addresses. Accordingly, in my view, the subject of refining judicial remedies—in the context of the statute before us—is not "boundless" as the Majority holds. Moreover, each of the component parts of Act 152 is germane to the subject so described. Two provisions amend definitions of terms for the purposes of the Judicial Code; several of the provisions describe periods of limitation for commencing particular types of actions; and the remaining provisions undertake substantial reconstruction of civil remedy schemes, including by creating a related enforcement mechanism within the Criminal Code.

Reasonable minds could certainly differ on the question of whether Act 152 exceeds the limits of the single-subject doctrine. Ultimately, however, mindful of the constitutional presumption and the requirement that the provision must stand unless it clearly, plainly and palpably violated the Constitution, I would uphold the constitutionality of Act 152 as against this Article III, Section 3 single-subject challenge.