**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 32 WAP 2014 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered June 17, 2014 at No. |
| v. | : | 1198 WDA 2013, vacating the Order of |
| | : | the Court of Common Pleas of Cambria |
| RAYMOND W. FARABAUGH, | : | County entered July 1, 2013 at No. CP- |
| | : | 11-CR-0000362-2011 and remanding. |
| Appellee | : | |
| | : | |
| | : | ARGUED:  April 8, 2015 |

**CONCURRING OPINION**

**MR. CHIEF JUSTICE SAYLOR**          **DECIDED:  DECEMBER 21, 2015**

I join the majority opinion and write, in particular, to elaborate on the genesis of paragraph (3.1), which I find to be especially relevant.

Initially, the majority concludes (correctly in my view) that paragraphs (2) and (3.1) are not in conflict, as the restricted definition of "sexually violent offense" only applies within the context of the latter.[1]  *See generally Cedarbrook Realty, Inc. v. Nahill*, 484 Pa. 441, 459, 399 A.2d 374, 383 (1979) (explaining that two provisions are only irreconcilable if they cannot operate concurrently).  This, however, raises the question of why the General Assembly would employ a specialized and limited definition of sexually

---

[1] To the extent Appellee suggests paragraph (3.1) "is applicable" but he is then affirmatively "removed from" its scope, Brief for Appellee at 11 – thereby purportedly creating a conflict with paragraph (2) – I believe such characterization is misleading.  To my mind, paragraph (3.1) is not "applicable" at all due to its restricted definition of "sexually violent offense."

violent offense for paragraph (3.1) only, and not for paragraph (2). To understand the Legislature's motivation in this regard, it is helpful to review a portion of the history of Megan's Law in Pennsylvania as it relates to this case.

As the majority observes, Act 19 of 2014 was intended, in substantial part, to account for the circumstance that, in *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013), this Court invalidated Act 152 of 2004 ("Megan's Law III") predicated on a single-subject violation. *See id.* at 75, 84 A.3d at 616; *see also* 42 Pa.C.S. §9799.11(b)(3) (setting forth Act 19's legislative intent with regard to *Neiman*).[2] *See generally* Majority Opinion, *slip op.* at 3. Megan's Law III, in turn, had required registration by persons convicted of indecent assault under Section 3126 of the Crimes Code, *see* 18 Pa.C.S. §3126, but only where the offense was graded as a misdemeanor of the first degree. *See* Act of Nov. 24, 2004, P.L. 1243, No. 152, §8, *codified at* 42 Pa.C.S. §9795.1(a)(1) (expired December 20, 2012, per 42 Pa.C.S. §9799.41).

The December 20, 2012 expiration date for such provision was imposed by Megan's Law IV, also known as the Sex Offender Registration and Notification Act, *see* Act of Dec. 20, 2011, P.L. 446, No. 111 (as amended 42 Pa.C.S. §§9799.10-9799.41) ("SORNA"), the relevant portion of which became effective one year after enactment, on December 20, 2012. *See id.* §18(2). Although *Neiman* was decided after Section 9795.1 expired, absent Act 19 *Neiman* would have interfered with one of SORNA's objectives, namely, to place Pennsylvania into compliance with the federal Adam Walsh Child Protection and Safety Act of 2006. *See* 42 Pa.C.S. §9799.10 (relating to purposes of subchapter). *See generally In re J.B.*, ___ Pa. ___, ___, 107 A.3d 1, 3 (2014). It would have done so by retroactively eliminating the registration periods for

_____

[2] Act 19 was passed two days before the expiration of *Neiman*'s grace period pursuant to which the invalidation of Megan's Law III was suspended for 90 days. *See Neiman*, 624 Pa. at 75, 84 A.3d at 616.

certain offenders under Megan's Law III – including individuals subject to Section 9795.1 – which in turn were extended by SORNA. *See* 42 Pa.C.S. §9799.15(a) (imposing lengthy registration periods for Tier I, II and III sexual offenders); *id.* §9799.14 (reflecting that indecent assault is a Tier I, II, or III offense depending on which subsection of Section 3126 is involved); *cf. id.* §9799.15(a.1) (providing credit for time registered prior to December 20, 2012). Thus, the Legislature faced a situation in which *Neiman* invalidated a statute which had already expired and been replaced, but whose effects remained beyond its expiration date – in the form of prior registration periods which had to continue in existence in order to be extended by SORNA. Inasmuch as the Assembly could do nothing to restore the now-expired Megan's Law III as such, it enacted legislation designed to continue in force SORNA registration requirements for offenders whose registration periods began during Megan Law III's governance.

Notably, Section 9795.1 went into effect on January 23, 2005. *See* Megan's Law III §19(5). Thus, because the ten-year registration requirement under Section 8 of Megan's Law III was imposable between January 23, 2005 and December 19, 2012 – the day before Section 9795.1 expired – it seems evident the General Assembly sought to preserve the effect of that provision via the specific wording of paragraph (3.1) – which by its terms applies to anyone who, during that interval, was convicted of a sexually violent offense or under probationary or parole supervision as a result of the conviction of a sexually violent offense. *See* 42 Pa.C.S. §9799.13(3.1)(i). Moreover, since Section 8 of Megan's Law III, as it pertains to individuals convicted of indecent assault, only encompasses convictions graded as first-degree misdemeanors, the legislative effort to preserve Megan's Law III registrants as SORNA registrants required a restricted definition of "sexually violent offense" for purposes of paragraph (3.1) – namely, one which would exclude persons convicted of indecent assault graded as a

second-degree misdemeanor, since those individuals would not have been required to register under Megan's Law III.

Paragraph (2) stands on a different footing, as it was included in Section 9799.13 at the time SORNA was enacted. Thus, the legislative goal as it pertains to paragraph (2) did not relate to recovering registration periods that would otherwise have been lost due to *Neiman* – as, indeed, it was enacted two years before *Neiman* was decided. Rather, paragraph (2) must also be understood in light of SORNA's stated purposes which, as noted, are set forth at Section 9799.10, 42 Pa.C.S. These include, not only bringing Pennsylvania into substantial compliance with the Adam Walsh Act, *see* 42 Pa.C.S. §9799.10(1), but more particularly, "requir[ing] individuals who are *currently* . . . supervised with respect to probation or parole or registrants under this subchapter to register with the Pennsylvania State Police . . .." *Id.* §9799.10(4) (emphasis added). Accordingly, the temporal targeting of paragraph (2) is couched in terms of individuals under supervision "*on or after the effective date of this section* [i.e., December 20, 2012]." *Id.* §9799.13(2) (emphasis added). Because paragraph (2) was included in Section 9799.13 at the time SORNA was enacted, it incorporates SORNA's general definition of "sexually violent offense" and – unlike with paragraph (3.1) – there is no need to alter that definition for a special, historical purpose.

Madame Justice Todd joins this concurring opinion.