[J-60-2017] [MO: Saylor, C.J.]

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 121 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 2087 MDA 2014 dated |
| | : | February 16, 2016 Affirming the |
| v. | : | Judgment of Sentence of the Luzerne |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-40-CR- |
| JOSEPH DERHAMMER, | : | 0001372-2010 dated October 24, 2014. |
| | : | |
| Appellant | : | ARGUED:  September 13, 2017 |

## CONCURRING OPINION

**JUSTICE WECHT**                                                   **DECIDED:  November 22, 2017**

I join the Court's opinion in full.  The Majority conclusively and convincingly rejects the Commonwealth's attempts to sustain a conviction against Joseph Derhammer that was based upon a statute that had been judged constitutionally invalid by this Court's decision in *Commonwealth v. Nieman*, 84 A.3d 603 (Pa. 2013).  As the Majority makes plain, at the time that Derhammer committed the acts that formed the basis for the charges against him, there simply was (by virtue of *Nieman*) no crime on the books for which he could be convicted.

In light of Derhammer's criminal history, this state of affairs will strike some as distinctly unpalatable, particularly because Derhammer had proven himself to be a danger to others.  It was the General Assembly's duty to ensure that all gaps in Megan's Law coverage were closed.  It was the responsibility of the General Assembly to avoid situations such as the one that results from the Court's decision today.

The General Assembly responded to *Nieman* by passing Act 19 of 2014. However, in that bill, the General Assembly did not re-enact 18 Pa.C.S. § 4915, which

was the provision created by Megan's Law III to criminalize an offender's failure to register a change in address. This provision had also been invalidated by *Nieman*. Whether by accident, or because it believed erroneously that its promulgation of SORNA[1] covered individuals such as Derhammer, the General Assembly failed to re-enact section 4915, thus creating the gap in criminalization that compels today's decision.

I write separately to address one troublesome feature (among several) that characterizes the Superior Court's ill-conceived attempt to revive Derhammer's conviction. The Superior Court endeavored mightily to find a way to backfill the chasm created by the General Assembly's misstep with Act 19. In our system, that was (and is) a job for the General Assembly, not the courts.

The Superior Court first held that Megan's Law II was revived automatically upon Megan's Law III's invalidation. Megan's Law II had a ten-day notification provision, which meant that Derhammer had committed no crime under that law. But the Superior Court then turned to Act 178, an amendment to Megan's Law III (not to Megan's Law II), which had a forty-eight hour notification period following a change in residence. The Superior Court concluded that Act 178, and not Megan's Law II, applied to Derhammer's conduct, notwithstanding the fact that the court had just deemed Megan's Law II to have gone back into effect. Thus, the Superior Court breathed new life into part of an amendment to the unconstitutionally enacted Megan's Law III, and concluded that Derhammer's conviction "remain[ed] sound" because "Act 178 amended Megan's Law II and not Megan's Law III." *Commonwealth v. Derhammer*, 134 A.3d 1066, 1078 (Pa. Super. 2016).

---

[1] SORNA stands for the "Sexual Offender Registration and Notification Act." *See* 42 Pa.C.S. §§ 9799.10–9799.41.

To summarize, the Superior Court held that an amendment to Megan's Law III, which was passed by the General Assembly to modify only the terms of Megan's Law III, actually was an amendment to Megan's Law II, and was intended as such by the General Assembly, even though the amendment was passed two years after Megan's Law III replaced Megan's Law II, and seven years before this Court would rule Megan's Law III unconstitutional. The Superior Court reached this startling and remarkable conclusion in an effort to fill in the gap created by the General Assembly's failure to resolve the problem that *Nieman* had placed in the legislature's lap.

After laws are repealed or stricken as unconstitutional, judicial interpretation of what remains can prove difficult. It is not entirely clear that the preceding law, *ipso facto*, returns to effect as if it had never been repealed or replaced, as the Superior Court held with regard to Megan's Law II. Moreover, this enterprise is particularly problematic when what is left in the wake of a statute's invalidation is a gap in the law. Filling such gaps is an inherently legislative function, which the judiciary should leave to those who have been elected by the people to write the laws.

When courts embark upon an effort to fill in the gaps left by lawmakers, judges are forced to guess between competing solutions, without any way to know which (if any) of the solutions the General Assembly would have chosen. Megan's Law III was a large, complex statute that included no less than twenty different sections. Act 178 amended only five of those sections,[2] one of which conflicted with the corresponding provision in Megan's Law II. By seeking to do what the General Assembly failed to do in the wake of *Nieman*, the Superior Court cornered itself into having to choose between

---

[2]    Act 178 amended sections 42 Pa.C.S §§ 9718.2, 9718.3, 9795.1, 9795.2, and 9798.3.

Megan's Law II and Act 178, without any basis or claim to know what the General Assembly would have done.

Once judges attempt to fill in legislative holes created by repeal or court decision, conflicts arise that courts are ill-equipped to resolve. By way of illustration, assume the same procedural history as the case *sub judice*, and assume further that Act 178 eliminated entirely the requirement that those subject to Megan's Law had to register changes in residence, and that SORNA then reinstated that requirement. If, upon Megan's Law III's invalidation, Megan's Law II had gone back into effect for some offenders, would Act 178 operate to eliminate the registration provision from Megan's Law II? Or could the General Assembly be assumed to have preferred that Megan's Law II return to full effect? How would a judge know? Through experience and observation of how the law has functioned, the legislators (many of whom were not members of the General Assembly when some of the measures were enacted) might prefer the stricter law, or they might have found that registration is unworkable and difficult to supervise. It is not for the judiciary to supply the answer by conjecture.

Alternatively, assume that Act 178 contained a provision that had no corresponding section in Megan's Law II, and that Megan's Law II was then revived. Since the Act 178 provision did not conflict with Megan's Law II, would it be enforced, or would Megan's Law II be enforced as written? Or, assume that Act 178 contained substantially more relaxed limitations on where sexual offenders can live and work. There is no proper way for a court to guess whether the General Assembly would have wanted the more relaxed provisions to govern, or whether it would have chosen to return to stricter rules.

As the learned Majority makes clear, *Nieman*, and the General Assembly's incomplete response to that decision, created a gap in legislation, leaving no criminal

law under which Derhammer can be prosecuted. Since *Marbury v Madison*, 5 U.S. 137 (1803), we have known that, from time to time, judicial decisions will leave a law in pieces. It is the legislators' (and not the judges') job to put those pieces back together. We interpret the law. We do not make it.