J-S53025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CARLOS R. CASTRO, JR. | |
| Appellant | No. 425 MDA 2015 |

Appeal from the Judgment of Sentence April 12, 2006
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000201-2005

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                      **FILED OCTOBER 27, 2015**

Carlos R. Castro, Jr., appeals, *nunc pro tunc*, from the judgment of sentence imposed April 12, 2006, in the Lycoming County Court of Common Pleas.  The trial court imposed an aggregate sentence of 60 months to 10 years' imprisonment, followed by a 20-year probationary term, after Castro was convicted, by a jury, of sexual assault, attempted involuntary deviate sexual intercourse ("IDSI"), and indecent assault.[1]  On appeal, Castro challenges the sufficiency of the evidence supporting his convictions, including his classification as a sexually violent predator ("SVP") under the

---

[1] 18 Pa.C.S. §§ 3124.1, 901, and 3126(a)(1), respectively.

former Megan's Law,[2] and the discretionary aspects of his sentence. For the

reasons that follow, we affirm.

The trial testimony, which led to Castro's convictions, is aptly

summarized by the trial court as follows:

> The facts of this case arise from the events that transpired in the early morning hours of January 10, 2005. On that date, [Castro] and the victim found themselves, along with several other acquaintances, spending the night at the Park Avenue home of a mutual friend. On this particular evening, the victim retired to the couch in the living room; two other people slept on the floor along side (sic) the couch [where] she slept. [Castro] shared a first floor bedroom with his girlfriend and another couple.
>
> Sometime around five o'clock in the morning on January 10, 2005, the victim was awakened by [Castro] on top of her. At the June 23-24, 200[5] trial in this matter, the victim testified that after inquiring of [Castro] what he was doing, he said, "please [N.B.], I'm horny." According to the victim, [Castro] then proceeded, without her consent, to move her onto her side, slide behind her, grab her breast and pull her pants down. The victim testified that she told [Castro] "no" several times; however, after successfully preventing him from penetrating her anally by maneuvering her body, he penetrated her vaginally.
>
> After forcefully penetrating her several times, [Castro] jumped off the couch after a noise or movement in the home startled him. The victim then pulled her pants up, retrieved a telephone, and went into the laundry room to call her boyfriend; [Castro], she testified, was in the kitchen at this time. Shortly after she entered the laundry room, [Castro] entered and

---

[2] At the time of his conviction, Castro was subject to the registration requirements of Megan's Law III. *See* 42 Pa.C.S. §§ 9791-9799.8; ***Commonwealth v. Hitner***, 910 A.2d 721, 723 n. (Pa. Super. 2006), *appeal denied*, 926 A.2d 441 (Pa. 2007). Effective December 20, 2012, Megan's Law was repealed and replaced by the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.14.

accosted the victim inquiring as to whether or not she intended to keep the incident between the two of them; the victim assured [Castro] she would keep the incident between them. Soon after this encounter, [Castro] retreated from the laundry room and the victim was able to speak with her boyfriend who immediately picked her up in a nearby parking lot. After briefly discussing what transpired that evening with her boyfriend, he took her to the hospital where a rape exam was performed and the victim made a formal complaint to the police department. On January 14, 2005, the Williamsport Police Department arrested [Castro] on allegations of rape, sexual assault, indecent assault, and attempted [IDSI]. [Castro] contends that the intimate contact that occurred on January 10, 2005 was the second of two such consensual encounters between the parties.

Trial Court Opinion, 7/17/2006, at 1-3.

As a result of the incident, Castro was charged with rape,[3] sexual assault, attempted IDSI and indecent assault. His case proceeded to jury trial in June of 2005. On June 24, 2005, the jury returned a verdict of not guilty on the charge of rape, but guilty on the remaining charges.

On July 7, 2005, Castro filed a post-verdict motion for judgment of acquittal, contending: (1) he could not have been convicted of sexual assault and attempted IDSI when the jury acquitted him of rape; and (2) the Commonwealth presented no evidence of force or threat of force to support his conviction of attempted IDSI. **See** Motion for Judgment of Acquittal, 7/7/2005. The trial court never entered a ruling on Castro's motion.[4]

---

[3] **See** 18 Pa.C.S. § 3121(a).

[4] In its opinion, the trial court states the motion was denied by operation of law. **See** Pa.R.Crim. 720(B)(3)(a).

On July 18, 2005, the court ordered Castro to undergo a Megan's Law assessment by the Sexual Offender Assessment Board ("SOAB") to determine if he met the criteria for classification as an SVP.[5] After several continuances, on May 5, 2006, the trial court conducted a combined Megan's Law/sentencing hearing. Based upon the testimony of the SOAB assessor, the court determined Castro met the criteria for classification as an SVP. Additionally, that same day, the court sentenced Castro to a term of 90 months to 10 years' imprisonment on the charge of sexual assault, a concurrent 12 to 24 months' imprisonment on the charge of indecent assault, and a consecutive term of 20 years' probation for the charge of attempted IDSI. Castro filed a timely notice of appeal on May 11, 2006. Thereafter, on May 15, 2006, the trial court amended its sentencing order to reflect Castro's sentence on the count of sexual assault should have been 60 months to 10 years' imprisonment.[6] *See* Order, 5/15/2006.

_____

[5] *See* 42 Pa.C.S. § 9795.4(a) ("After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board.").

[6] Although we recognize the trial court modified Castro's sentence **after** a notice of appeal had been filed, our Supreme Court has held that "under limited circumstances, even where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes." **Commonwealth v. Klein**, 781 A.2d 1133, 1135 (Pa. 2001). Here, Castro's original sentence for the sexual assault conviction, 90 months to 120 months' imprisonment, clearly violated the provision of the Judicial Code that mandates "a minimum sentence of confinement … shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S.
*(Footnote Continued Next Page)*

- 4 -

On November 17, 2006, this Court dismissed Castro's direct appeal when he failed to file an appellate brief. Less than one year later, on October 29, 2007, Castro filed a timely, *pro se* PCRA petition seeking reinstatement of his direct appeal rights. Although counsel was promptly appointed and a conference was scheduled, no further action was taken on Castro's petition until **January 13, 2015**, when the trial court appointed the Public Defender's Office to represent Castro.[7] Thereafter, on February 6, 2015, the court entered an order, by agreement of the parties, granting Castro's PCRA petition and reinstating his direct appeal rights, *nunc pro tunc*. This timely appeal follows.[8]

In his first issue on appeal, Castro argues the evidence was insufficient to support his convictions.

_____

(Footnote Continued)

9756(b)(1). Accordingly, we conclude the trial court had the authority to correct the patent mistake in Castro's original sentence.

[7] The record contains no explanation for the **seven year delay** after Castro filed a timely PCRA petition based on counsel's *per se* ineffectiveness for failing to file a brief on appeal. Indeed, the trial court does not even mention the delay in its Pa.R.A.P. 1925(a) opinion, and the Commonwealth has neglected to file a brief in this appeal. We find the cavalier attitude with which both the trial court and the Commonwealth have apparently considered this appeal, disconcerting at the very least.

[8] On March 6, 2015, the trial court ordered Castro to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Castro complied with the court's directive in a timely manner. Thereafter, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a), in which it relied on its prior opinion filed on July 17, 2006.

> In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [fact finder's] beyond a reasonable doubt. Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citations omitted), *cert. denied*, 135 S. Ct. 1400 (U.S. 2015). Furthermore, "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence[,]" and an appellate court will not substitute its credibility determination for that of the jury. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1033 (Pa. 2007), *cert. denied*, 553 U.S. 1035 (2008).

Castro focuses his sufficiency challenge on the jury's acquittal of the rape charge. He argues: "[S]ince all the charges against him stem from one brief incident involving one victim, and [he] was acquitted of the lead charge of rape which shares specific elements with the lesser included offenses, it is logically inconsistent that [he] was convicted of the lesser included offenses." Castro's Brief at 14. Essentially, Castro contends the lesser crimes should have merged with the crime of rape, so that the jury's guilty verdicts on the charges of sexual assault, indecent assault, and attempted IDSI, are logically inconsistent with its acquittal on the crime of rape.

First, we note Castro's reliance on **Commonwealth v. Williams**, 496 A.2d 31 (Pa. Super. 1985) (*en banc*), for merger principals is misplaced because **Williams** involved the merger of offenses **for sentencing purposes**. **See id.** at 34 ("This case was certified to the Court *en banc* to address problems arising under the doctrine of merger of offenses for sentencing.").

Second, to the extent Castro argues his convictions are logically inconsistent, we agree with the conclusion of the trial court that the jury's verdicts were not inconsistent. **See** Trial Court Opinion, 7/17/2006, at 10. Castro was convicted of attempted IDSI, sexual assault and indecent assault. A defendant is guilty of attempted IDSI if, with the intent to commit IDSI, that is, the intent to forcibly compel the complainant to engage in deviate sexual intercourse (here, anal penetration), "he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901. **See also** 18 Pa.C.S. §§ 3101, 3123(a)(1). A person is guilty of sexual assault if he "engages in sexual intercourse … with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. Further, to secure a conviction for indecent assault, the Commonwealth must prove the defendant, without the complainant's consent, had indecent contact with the complainant, which involves "[a]ny touching of the sexual or other intimate parts of the [complainant] for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. §§ 3101, 3126. Conversely, a conviction

of rape requires proof that the defendant "engage[d] in sexual intercourse with a complainant … [b]y forcible compulsion."  18 Pa.C.S. § 3121(a)(1).

The trial court analyzed the relationship between the crimes and the evidence produced at trial as follows:

> The apparent similarities between the elements of rape, IDSI, and sexual assault are readily apparent to the Court; however, each of these crimes encompasses distinct and unique elements.  For example, although both IDSI and rape require the same element of force, the crime of rape requires the element of forced sexual intercourse whereas the crime of IDSI requires forced deviate sexual intercourse; therefore, one can be found guilty of IDSI and not guilty of rape and, where the facts of the case show that the defendant forcibly engaged in only vaginal intercourse, the defendant can be found guilty of rape and not guilty of IDSI.  In addition, although both rape and sexual assault require the same element of sexual intercourse, the seemingly fine line distinction between "forcible compulsion" and "lack of consent" distinguishes the crimes.  The Superior Court of Pennsylvania explained this distinction as follows:
>
>> [w]e observe that the term "forcible compulsion," as used in section 3123 (pertaining to [IDSI], <u>directly imputes</u> the perpetrator's conduct whereas the absence of the complainant's consent in the language of § 3124.1 (pertaining to sexual assault) requires the fact finder to <u>consider the complainant's conduct</u>.  Although facts may be present in a case that would suggest a finding of forcible compulsion and the absence of consent, the want of consent is not necessarily included in a finding that a defendant forcibly compelled the complainant to engage in sexual intercourse.
>
> ***Commonwealth v. Buffington***, 2001 PA Super 309, P10, 786 A.2d 271, 274 (Pa. Super. Ct. 2001) (emphasis added)[, *aff'd*, 828 A.2d 1024 (Pa. 2003)].
>
> The facts presented at the trial in this matter (i.e. that [Castro] forcibly attempted to penetrate the victim anally and did penetrate her vaginally without her consent) were directly in line with the jury's verdict; therefore, the Court respectfully

disagrees with [Castro's] assertion that the jury's verdict was logically inconsistent.

Trial Court Opinion, 7/17/2006, at 9-10.

We agree with the court's well-reasoned analysis. Based upon the testimony of the victim at trial, the jury could have determined that Castro (1) attempted to commit IDSI when he forcibly engaged in anal intercourse with the victim;[9] (2) committed indecent assault when he grabbed the victim's breast;[10] and (3) committed a sexual assault when he engaged in vaginal intercourse with the victim without her consent.[11] However, the jury could have also concluded that Castro did not use force to engage in vaginal intercourse. *See* N.T., 6/23/2005-6/24/2005, at 18-20 (testimony of victim explaining she did not struggle, yell or cry out, but told Castro to stop "[a]bout four or five" times). Therefore, because we conclude the jury's verdicts were not inconsistent, Castro's first issue fails.[12]

Next, Castro challenges the sufficiency of the evidence supporting his classification as an SVP.

---

[9] *See* N.T., 6/23/2005-6/24/2005, at 17-18.

[10] *See id.* at 17.

[11] *See id.* at 18.

[12] In any event, we note that even if the jury's verdicts were inconsistent, "inconsistent verdicts are not grounds for relief." *Commonwealth v. Stokes*, 38 A.3d 846, 855 (Pa. Super. 2011) (citations omitted).

In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

The standard of proof governing the determination of SVP status, i.e., "clear and convincing evidence," has been described as an "intermediate" test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.

* * *

The clear and convincing standard requires evidence that is "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue."

**Commonwealth v. Fuentes**, 991 A.2d 935, 942 (Pa. Super. 2010) (*en banc*), *appeal denied*, 12 A.3d 370 (Pa. 2010).

At the time Castro was convicted, he was subject to the assessment provisions of the former Megan's Law,[13] which stated, in relevant part:

_____

[13] We recognize that in **Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013), the Supreme Court held Act 152 of 2004, which, *inter alia*, modified and replaced the then-existing version of Megan's Law, violated the single subject rule. **Id.** at 605. The Court struck the Act in its entirety, but stayed its decision for 90 days "in order to provide a reasonable amount of time for the General Assembly to consider appropriate remedial measures, or to allow for a smooth transition period." **Id.** at 616. Thereafter, the Legislature amended the statute to address the decision in **Neiman**. **See** 42 Pa.C.S. § 9799.11(b)(3). The amended act applies to, *inter alia*, "[a]n individual who … was required to register with the Pennsylvania State Police pursuant to this subchapter prior to December 20, 2012, and who had not
*(Footnote Continued Next Page)*

> After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction.

42 Pa.C.S. § 9795.4(a).[14]  After the court entered such an order, a member of the Sexual Offenders' Assessment Board ("SOAB") was assigned to conduct an assessment to determine if the individual should be classified as a sexually violent predator.  42 Pa.C.S. § 9795.4(b).[15]  The Act defined a "sexually violent predator" as:

> A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. …

42 Pa.C.S. § 9792.[16]  Furthermore,

> "predatory" conduct, which is indispensable to the designation, is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained

_(Footnote Continued)_ _____

fulfilled the individual's period of registration as of December 20, 2012[.]" 42 Pa.C.S. § 9799.13(3)(i).  Further, the amended act defined a "sexually violent predator" as, _inter alia_, "an individual determined to be a sexually violent predator under section 9795.4 (relating to assessments) prior to the effective date of this subchapter[.]"  42 Pa.C.S. §§ 9799.12.  Accordingly, we find no prohibition in evaluating the sufficiency of Castro's SVP classification under the statute existing at the time of his assessment in 2006.

[14] **_See also_** 42 Pa.C.S. § 9799.24(a).

[15] **_See also_** 42 Pa.C.S. § 9799.24(b).

[16] **_See also_** 42 Pa.C.S. § 9799.12.

or promoted, in whole or in part, in order to facilitate or support victimization." *Meals*, 590 Pa. at 120, 912 A.2d at 218–19 (*quoting* 42 Pa.C.S.A. § 9792).

*Fuentes*, *supra*, 991 A.2d at 943.

The Act also provided the following non-exclusive list of factors for an assessor to consider in determining whether an offender should be classified as a sexually violent offender, including: (1) the facts of the offense, such as (a) whether there were multiple victims, (b) whether the offender "exceeded the means necessary to achieve the offense[,]" (c) the type of sexual conduct involved, (d) the age and mental capacity of the victim, and (e) whether the offender displayed "unusual cruelty" during the crime; (2) the offender's prior criminal history; (3) the offender's characteristics, such as his or her age, use of illegal drugs, mental illness, or other behavioral characteristics that contributed to the conduct; and (4) any additional factors "reasonably related to the risk of re-offense." 42 Pa.C.S. §9795.4(b)(1)-(4).[17]

In the present case, Castro's assessment was conducted by licensed psychologist C. Townsend Velkoff, M.S. Velkoff concluded that Castro met the definition for classification as an SVP. Specifically, Velkoff testified Castro suffers from Antisocial Personality Disorder, which makes him "opportunistic." N.T., 5/5/2006, at 14. He explained, "an individual with

---

[17] *See also* 42 Pa.C.S. § 9799.24(b).

this personality disorder if he has an opportunity to assault someone sexually [he] may do so because that's what he feels like doing." ***Id.*** Further, Velkoff stated he believed Castro engaged in predatory behavior:

> Without discussion or any prior intimate interaction with the victim, [Castro] climbed on top of her while she was sleeping on the couch in the apartment where they were both staying, in other words, he initiated this intimate contact without any basis for it, just went ahead and did that. [Castro] forced the victim's pants and underpants down to her knees and began attempting to penetrate her anally with his penis. [Castro] ignored the victim's demands for him to stop. [Castro] got up quickly when someone else began moving around the apartment, which implies that [he] was aware he was acting inappropriately. [Castro] accosted the victim again when she went into the laundry area and tried to engage her again in sexual activity again.[18] [Castro] told the victim not to tell anyone what he did to her.

***Id.*** at 15-16. Velkoff also testified that an individual who has antisocial personality disorder and has been convicted of a sexual offense would be likely to reoffend. ***See id.*** at 23-24.

The trial court found Velkoff's testimony credible. The court emphasized that Castro's "extensive criminal history is a clear indication of his refusal to adhere to social norms and obey the law." Trial Court Opinion,

---

[18] We note that while the probable cause affidavit attached to Castro's criminal complaint indicated Castro tried to initiate further sexual contact with the victim in the laundry room, the victim did not testify to that fact at trial. ***See*** Criminal Complaint, Affidavit of Probable Cause, 1/12/2005; N.T., 6/23/2005-6/24/2005, at 26, 28 (victim testified Castro was in the laundry room with her for only "about 30 seconds to 45 seconds" and he asked her if she was okay, and "if this was going to stay between us[.]").

7/17/2006, at 7. Moreover, while the court noted the fact Castro had no prior convictions for sexual crimes "is a mitigating factor against [] classification[,]" it ultimately determined the fact was "not controlling." **Id.**

Here, Castro argues the court erred in finding he met the criteria for classification as an SVP. Castro first emphasizes that, before preparing his assessment, Velkoff failed to "speak to law enforcement involved, did not contact [the victim], did not talk to [Castro], and relied upon information that was not presented at trial regarding sexual contact between [Castro and the victim]."[19] Castro's Brief at 18. Moreover, Castro asserts that Velkoff's testimony concerning his risk of re-offense was purely speculative: "Mr. Velkoff testified that it was mere speculation that [Castro] is likely to commit sexually violent acts in the future based solely on his Anti-Personality Disorder and that he committed an individual sexually based offense one time." **Id.** at 19. Lastly, he notes that, of the factors listed in Section 9795.4(b), there was no evidence he (1) used force or threats of force, (2) had multiple sexual offenses or victims, or (3) suffered from a mental illness or used drugs or alcohol. **See id.** at 19-20. Therefore, he argues the trial court "erred in finding he meets the criteria as a sexually violent predator." **Id.** at 20.

---

[19] Castro cites to the testimony of Velkoff in which he acknowledged he was unaware Castro had been acquitted of the charge of rape. **See** N.T., 5/5/2006, at 18.

Our review of the record reveals no basis for relief. First, to the extent Castro claims Velkoff's report was unreliable because Velkoff did not interview him, we note Castro **declined to be interviewed** as part of the assessment,[20] and the lack of an interview with the defendant does not impede the assessor's ability to determine if a defendant meets the criteria for classification as a sexually violent predator. ***See Commonwealth v. Prendes***, 97 A.3d 337, 359 (Pa. 2014) (noting "the absence of an interview does not preclude the ability to evaluate the offender's behavior through available history for characteristics similar or dissimilar to the criteria set forth in the law for defining a sexually violent predator.") (citation omitted), *appeal denied*, 105 A.3d 736 (Pa. 2014). Moreover, to the extent Castro seeks to undermine Velkoff's conclusions because Velkoff did not speak with the police or the victim, and relied on information not presented at trial, we note the Act does not require an assessor to conduct **any** interviews as part of his sexually violent predator assessment. Further, it is well-established that an assessor may rely on documents other than transcripts to determine whether a defendant meets the criteria for classification as a sexually violent predator. ***See id.*** at 362, *citing* Pa.R.E. 703.

Second, to the extent Castro argues several of the Section 9795.4(b) factors were lacking, this claim also fails.

---

[20] N.T., 5/5/2006, at 5.

> [T]here is no statutory requirement that all of [the factors] or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. Thus, [t]he Commonwealth does not have to show that any certain factor is present or absent in a particular case.

*Prendes*, *supra*, 97 A.3d at 358-359 (citation and internal punctuation omitted).

Here, after considering all of the Section 9795.4(b) factors, Velkoff concluded the most significant factor was Castro's prior criminal history. *See* N.T., 5/5/2006, at 8. *See also* Sexual Offender Assessment, 10/5/2005. Velkoff explained that Castro was arrested for simple assault when he was 14-years-old, and continued to commit offenses every year until he was 18-years-old, when he was incarcerated for four years. *Id.* at 9-10, 11. Soon after his release, he was arrested several more times and imprisoned again. The current sexual assault occurred when he was 23-years-old and on parole from a prior conviction. *Id.* at 11. Velkoff also noted that Castro had several "write-ups" while incarcerated on the present offense, which "represent a continued tendency to engage in aggressive behavior, disrespect for staff, [and] disruption of prison routine." *Id.* at 10. Although Velkoff acknowledged none of Castro's prior convictions were for sexual offenses, he testified he did not find that to be a significant mitigating factor because, based on his diagnosis of antisocial personality disorder and Castro's extensive criminal history, Castro was likely to commit another sexual offense now that "he's broken that barrier, he's gone in that direction[.]" *Id.* at 24. Further, Velkoff also found the absence of

- 16 -

intoxication or mental illness noteworthy because "[i]t would imply that [Castro] was acting on his sexual interest of the victim in a sound state of mind and a non-intoxicated state of mind." *Id.* at 7.

In *Commonwealth v. Meals*, 912 A.2d 213, 223 (Pa. 2006), the Pennsylvania Supreme Court emphasized "[t]he task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance." *See id.* at 222-223 (holding "Superior Court stepped beyond its authority when it reweighed the evidence, giving more weight to 'absent' factors than to those found and relied upon by the trial court, and ignoring the Commonwealth's expert's explanation of the relevance of the absent factors."). Here, the trial court found Velkoff's testimony credible, and we conclude his findings are supported in the record. Accordingly, we will not weigh the significance of these factors as compared to others that may not be present in this case.

Lastly, with respect to Castro's contention that Velkoff's conclusion was speculative, such a claim goes to the weight of the assessor's testimony, not to the sufficiency of the evidence supporting the assessment. As this Court has explained:

> a Board report or opinion that the individual has an abnormality indicating the likelihood of predatory sexually violent offenses is itself evidence. Also while a defendant is surely entitled to challenge such evidence by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case. Accordingly, they do not affect our sufficiency analysis.

- 17 -

*Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). Therefore, we conclude Castro's second claim warrants no relief.

In his final issue on appeal, Castro argues the sentence imposed by the trial court is excessive.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). In order to reach the merits of such a claim, this Court must determine:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011) (footnotes omitted).

Here, Castro failed to challenge the discretionary aspects of his sentence either during the sentencing hearing, or in a timely filed motion for reconsideration of sentence. "Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *See Commonwealth v.*

*Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). Accordingly, he is entitled to no relief on his last claim.[21]

Judgment of sentence affirmed.

_____

[21] We note that even if Castro had preserved his claim that the trial court's sentence was excessive, we would conclude he is entitled to no relief. ***See Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015) ("Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.").

Pursuant to 42 Pa. C.S. § 9781(c)(2), an appellate court must vacate a sentence imposed within the guidelines range if "the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" Here, Castro asserts the court's imposition of a 20-year consecutive term of probation was excessive and unreasonable because: (1) "the timeframe of the incident was very brief[;]" (2) all three crimes stemmed from the same brief incident; and (3) the victim was not "physically injured in a major way[.]" Castro's Brief at 22-23.

In addressing this issue in its opinion, the trial court noted the Commonwealth requested Castro be sentenced consecutively on all three crimes. ***See*** Trial Court Opinion, 7/14/2006, at 13-14. However, the court chose to sentence him consecutively on only the two most serious offenses, and impose a probationary term for the charge of attempted IDSI. The Court explained, "[b]ecause the Court would have been within its discretion to run all of [Castro's] sentences consecutive and not impose any probationary periods in lieu of incarceration, the Court finds [Castro's] argument that his sentences are unduly harsh without merit." Trial Court Opinion, 7/14/2006, at 13-14. We find no reason to disagree.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2015