J-S01027-22

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

 COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 :
 v. :
 :
 :
 JARED LEE DOWNWARD :
 :
 Appellant : No. 634 MDA 2021

 Appeal from the Order Entered May 6, 2021
 In the Court of Common Pleas of Lancaster County Criminal Division at
 No(s): CP-36-CR-0005279-2008

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY NICHOLS, J.: FILED MARCH 14, 2022

 Appellant Jared Lee Downward appeals pro se from the order denying

his petition to terminate his registration requirements under the Sexual

Offender Registration and Notification Act1 (SORNA). Appellant argues that

the trial court erred in concluding that he was subject to the registration

requirements set forth in Subchapter I. Following our review of the record,

we affirm based on thetrialcourt’sopinion.

 summary of the facts and procedural history
 We adopt the trial court’s

underlying this matter. See Trial Ct. Op., 7/6/21, at 1-11. Briefly, Appellant

pled guilty to involuntary deviate sexual intercourse (IDSI), corruption of

minors, and related offenses for incidents involving three victims in 2007 and

____________________________________________

* Retired Senior Judge assigned to the Superior Court.

1 42 Pa.C.S. §§ 9799.10-9799.75.
J-S01027-22

2008. On November 25, 2009, the trial court sentenced Appellant to an

aggregate term of twelve and a half to twenty-eight years’ incarceration.
 2

Appellant was also designated a sexually violent predator (SVP). At that time,

Appellant was subject to lifetime registration under Megan’sLawIII.

 Appellant filed the instant petition to terminate his SORNA registration

requirements on October 27, 2020.3 On May 6, 2021, the trial court issued

 petition.
anorderdenyingAppellant’s

 Appellant subsequently filed a timely notice of appeal and a court-

ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a)

opinion in which it addressed Appellant’s
 substantive challenges to SORNA and

concluded that he was not entitled to relief. Trial Ct. Op. at 11-16.

 On appeal, Appellant raises the following issue:

____________________________________________

2 Appellant did not file a direct appeal. However, we note that Appellant
subsequently filed a timely petition for relief under the Post Conviction Relief
Act (PCRA), 42 Pa.C.S. §§ 9541-9546 in which he challenged the legality of
his sentence with respect to one of the victims. On March 30, 2012, the PCRA
court granted partial relief and re-sentenced Appellant to an aggregate term
of twelve to twenty-six years’ incarceration. See Commonwealth v.
Downward, 357 MDA 2012 at 3-4 (Pa. Super. filed Nov. 1, 2012)
(unpublished mem.).

3 Therein, Appellant argued that (1) because he was originally subject to
registration under Megan’s Law III , and that statute was ruled
unconstitutional, there was “nolegallyenforceableperiod registration
 of under
which [Appellant] can be made subject to SORNA;” 2)( Appellant’sSVP
designation must be vacated; and (3) the internet dissemination provisions of
SORNA II were unconstitutional and cannot be applied to Appellant. Pet. to
Terminate Sex Offender Registration Requirements, 10/27/20, at ¶¶ 14-22.

 -2-
J-S01027-22

 Does the application of SORNA to [Appellant’s]case violate due
 process when [Appellant] does not have a period of registration
 that was legally imposed and has not expired?

Appellant’sBriefat4.

 Appellant’s claim raises a question ofTherefore,
 law. “our standard of

review is de novo, and our scope of review is plenary.” Commonwealth v.

Brensinger, 218 A.3d 440, 456 (Pa. Super. 2019) (en banc) (citation

omitted).

 Following our review of the record, the parties’ briefs, and the -well

reasoned conclusions of the trial court, we affirm on the basis of the trial

 See Trial Ct. Op. at 11-16. Specifically, we agree with the
court’s opinion.

trial court that because Appellant was previously subject to registration under

Megan’sLawIII,“ and his registration period (his lifetime) had not expired, he

was and is subject to SORNA I and its replacement, SORNA II.” Id. at 12-13.

Likewise, although our Supreme Court found that Megan’s Law III was

unconstitutional, that ruling did not operate to remove Appellant from the

class of “existing registrants” subject to registration under SORNA. Id. at 11-

12. Finally, we agree with the trial court that Appellant is not entitled to relief

from his SVP designation or from his lifetime registration, notification, and

counseling (RNC) requirements. Id. at 14-16.

 For these reasons, we conclude that the trial court did not err in denying

 n to terminate his registration requirements.
Appellant’s petitio See

Brensinger, 218 A.3d at 456. Accordingly, we affirm based on the trial

 .
court’sopinion

 -3-
J-S01027-22

 Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2022

 -4-
 2_Opinion and Order

 IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
 CRIMINAL

 OPINION SUR PA.R.A.P. 1925(a)

 pro se

I. BACKGROUND
 2_Opinion and Order

thirty days to respond to said Notice. After an extension of this deadline, Downward

filed his counseled response on June 18, 2018, asserting the retroactive application of

SORNA II to Downward was an unconstitutional violation of the ex post facto laws.

Thereafter, by Order of July 9, 2018, the Court directed the parties to file supplemental

briefs in accordance with the schedule contained therein. 8 Downward filed a timely

counseled brief on August 10, 2018. In lieu of a responsive brief, however, the

Commonwealth filed a Motion to Stay on August 14, 2018, citing the matter of

Commonwealth v. Lippincott, then-pending before the Superior Court, from which the

Commonwealth anticipated a forthcoming ruling. The Commonwealth believed the

Lippincott decision would have direct implications for Downward's 2018 Amended

PCRA. 9 The stay was granted by Order of August 20, 2018, with direction to the

Commonwealth to file notice when the Lippincott decision had been rendered.

 On April 17, 2019, the Commonwealth filed a Notice advising of a decision in

Lippincott. 10 The Lippincott Court, however, did not reach the question of the

constitutionality of the retroactive application of SORNA II, and the Commonwealth

8 Although Downward was represented by counsel at all times during this time period, he nonetheless

submitted two additional prose filings to the Court: 1) a motion on July 23, 2018, to withdraw his PCRA;
and 2) yet another prose PCRA petition, asserting the same grounds for relief as the 2018 Amended
Petition. Such hybrid representation has been expressly precluded by our Supreme Court, whether at
trial, on appeal, or during PCRA proceedings. See Commonwealth v. Jet e, 611 Pa. 166, 23 A.3d 1032,
1038-40 (2011 ); Commonwealth v. Pursell, 555 Pa. 233, 724 A.2d 293, 302 (1999); Commonwealth v.
Ellis, 534 Pa. 176, 626 A.2d 1137, 1139 (1993). See also Commonwealth v. Willis, 29 A.3d 393, 400 (Pa.
Super. 2011). Consequently, the Court directed both pleadings to be docketed and copies sent to
Downward's counsel, in compliance with Pa.R.Crim.P. 576(A)(4) ("In any case in which a defendant is
represented by an attorney, if the defendant submits for filing a written motion, notice, or document that
has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing" and send a
copy to the attorney of record in the case within ten days of receipt.).
9
 The Supreme Court had directed the Lippincott parties to brief the issues of whether Act 10/SORNA II
was punitive in nature and whether it could be applied retroactively.
1
 ° Commonwealth v. Lippincott, 208 A.3d 143 (Pa. Super. 2019).

 5
 2_Opinion and Order

requested another stay pending a decision from the Pennsylvania Supreme Court in the

matter of Commonwealth v. Lacombe, for which the Supreme Court had granted

certiorari exclusively to review the constitutionality of retroactively applying SORNA II,

Subchapter I. The Commonwealth anticipated Lacombe's outcome to be dispositive of

Downward's 2018 Amended PCRA. A second stay was granted by Order of April 18,

2019, again with direction for the Commonwealth to file notice upon decision in

Lacombe. The Supreme Court rendered its opinion on July 21, 2020. See

Commonwealth v. Lacombe, 234 A.3d 602 (2020) (Lacombe). The Commonwealth did

not notify this trial court, however, and neither party moved to lift the stay.

 On September 4, 2020, Downward filed another prose Petition to Terminate Sex

Offender Registration Requirements, prompting the Court to contact counsel for both

parties regarding proceeding on the 2018 Amended PCRA in light of Lacombe. After a

review of the relevant new law regarding SORNA II and registration requirements,

Downward's counsel filed on October 5, 2020, a praecipe to withdraw and discontinue

both the 2018 prose PCRA and the 2018 Amended PCRA, certifying that Downward

was in agreement with these withdrawals. Despite this representation, however,

Downward filed yet another pro se Petition to Terminate Sex Offender Registration

Requirements (2020 Petition) on October 27, 2020, not two weeks after discontinuing

the 2018 PCRA petitions. The Commonwealth responded, and on May 4, 2021, this

Court entered an Order denying the 2020 Petition. Downward filed a timely Notice of

Appeal on May 14, 2021, for which this Court granted in forma pauperis status on May

24, 2021. This Opinion issues pursuant to Rule 1925(a) of the Pennsylvania Rules of

Appellate Procedure.

 6
 2_Opinion and Order

II. Discussion

 A. Jurisdiction

 We begin by noting this Court has jurisdiction to entertain the 2020 Petition

pursuant to our Supreme Court's guidance in Lacombe, which directs that a challenge

to the application of a sex offender registration statute need not be raised through the

PCRA, where the timeliness requirement would preclude many registrants from seeking

relief in the face of changes in the law. Specifically, the Lacombe Court held that

 under the PCRA ... many registrants ...would be ineligible for relief
 on timeliness grounds. See 42 Pa.C.S. § 9545(b)(1) (PCRA petition
 must be filed within one year of judgment of sentence becoming final
 unless exception applies). Other registrants may be ineligible
 because their sentence has expired while their registration
 requirements continue. See 42 Pa.C. S. § 9543(a)(1) (PCRA
 petitioner must be serving sentence to be eligible for relief). Both
 situations arise from the fact that the registration period does not
 begin until registrants are released from prison, which may be well
 after their sentence has become final or may signal the completion
 of their sentence. Accordingly, we decline to find the PCRA, or any
 other procedural mechanism, is the exclusive method for challenging
 sexual offender registration statutes.

Lacombe, 234 A.3d at 617.

 B. The 2020 Petition

 In the prose 2020 Petition, Downward seeks relief from the retroactive

application of SORNA ll's registration requirements to him and from his classification as

an SVP. Downward's argument seems to run thus: 1) Downward was convicted in

2008 and subject to the SVP criteria, registration requirements, and other procedures of

Megan's Law Ill; 2) our Supreme Court struck down Megan's Law Ill in its entirety

through Commonwealth v. Neiman, 84 A.3d 603,607 (2013) (Neiman); 3) Neiman

rendered Megan's Law Ill void ab initio and therefore Downward was freed of any

 7
 2_Opinion and Order

legally enforceable registration requirements whatsoever; 4) Subchapter I of SORNA II

only applies to defendants whose time for registering was unexpired at the time of its

enactment; 5) since Megan's Law Ill was stricken in its entirety, and Downward's

registration requirements no longer existed at the time of SORNA ll's enactment, he

was not in the category of registrants with unexpired registration requirements; 6)

therefore, SORNA 11 and its registration requirements cannot apply to him; and 7) in

addition, since he was adjudicated an SVP under Megan's Law Ill, and Megan's Law Ill

is void ab initio, Downward's SVP designation is invalid and the Court should vacate

that portion of his sentence which designates him SVP. For the reasons detailed below,

Downward's reasoning is flawed and his arguments without merit.

 Before turning to the specifics of the 2020 Petition, however, it is prudent to begin

this analysis with an overview of the historical development of Pennsylvania's law

regarding convicted sex offender registration. Indeed, between the General Assembly

and our courts, the law surrounding reporting requirements for adjudicated sex

offenders has undergone a complicated evolutionary process over the past several

decades, especially concerning the application of reporting requirements to offenders

whose crimes were committed prior to December 20, 2012, the date of SORNA l's

enactment. This Court is mindful of the challenges presented, even to experienced

legal practitioners, when our General Assembly and Supreme Court must engage, as

here, in a series of back-and-forth efforts at legislation and interpretation in order to

arrive at a constitutionally permissible scheme of criminal law and procedure that

properly balances the protection of the public with the Constitutional rights of individual

defendants. As set forth in more detail below, Downward is and has been continually,

 8
 2_Opinion and Order

without interruption, subject to lifetime registration, notification, and counseling (RNC)

requirements under every governing law. Having pied guilty to, among other crimes,

three counts IDSI and two counts of statutory sexual assault, and having been found an

SVP, Downward has been and remains subject to lifetime registration under Megan's

Law Ill, Megan's Law II, and every iteration of SORNA. None of the changes in the law

since Downward's conviction have freed him of these requirements.

 In 1995, the Pennsylvania legislature passed the first in what would become a

series of statutes requiring convicted sex offenders to register their personal

information, such as their current address, with the Pennsylvania State Police (PSP)

upon completion of their period of incarceration. See former 42 Pa. C.S. §§9791-

9799.6 (Megan's Law I). Megan's Law I was subsequently revised and amended

through former 42 Pa. C.S. §§9791-9799.7 (Megan's Law II, enacted in 2000), and

former 42 Pa. C.S. §§ 9791-9799.9 (Megan's Law 111, enacted in 2004), which modified

certain portions of Megan's Law II. The General Assembly replaced Megan's Law

generally on December 20, 2012, with the enactment of the Sex Offender Registration

and Notification Act, former 42 Pa. C.S. §§ 9799.10-9799.41 (SORNA 1).11 SORNA I

provided explicitly for "the expiration of prior registration requirements, commonly

referred to as Megan's Law, 42 Pa.C.S. §§ 9791 - 9799.9, as of December 20, 2012,

and for the effectiveness of SORNA on the same date." In re J.B., infra n.11.

11 SORNA I was passed in response to the federal Adam Walsh Protection and Safety Act of 2006,
Public Law 109-248, 42 U.S.C. §§ 16901 - 16991, which mandates that each state impose certain tier­
based registration and notification requirements on sex offenders in order to maintain federal grant
funding. See In re J.B., 630 Pa. 408, 107 A.3d 1, 3 (2014).

 9
 2_Opinion and Order

 Subsequently, the Supreme Court found in 2013 that Megan's Law Ill was

unconstitutional in its entirety and therefore invalid. See Neiman, supra. Cognizant of

the potential for profound implications of its ruling for those registrants sentenced under

Megan's Law Ill, however, the Neiman Court stayed the effective date of its decision to

provide the legislature the opportunity to enact clarifying and curative amendments to

SORNA I regarding registrants whose crimes were committed prior to SORNA l's

enactment. In response, the General Assembly enacted legislation on March 14, 2014,

modifying the language of 42 C.S. §9799.13(3) "to clarify that persons who were

required to register with the state police at any time before SORNA's effective date, and

whose registration period had not expired, were still obligated to register with the state

police as provided in Section 9799.15." Commonwealth v. Derhammer, 653. Pa. 391,

396, 173 A.3d 723, 726 (2017) (emphasis added).

 In 2017, the Supreme Court found in Muniz "that the registration requirements of

Subchapter Hof SORNA I, as applied retroactively, were punitive in nature under the

seven-factor test set forth by the United States Supreme Court in Kennedy v. Mendoza­

Martinez, and, thus, SORNA I was unconstitutional under the ex post facto clauses of

both the United States and Pennsylvania Constitutions." Commonwealth v. Elliot, 249

A.3d 1190 (2021). Thus, the retroactive application of SORNA's registration

requirements were found unconstitutional in so far as they operated to enhance the

RNC requirements of an existing registrant. In response to Muniz, the General

Assembly amended SORNA I by two legislative acts: Act 10 and Act 29. 12 Together,

these amendments comprise the current sex offender registration statute in effect today,

12 Act of February 21, 2018, P.L. 27 (Act 10); Act of June 12, 2018, P.L. 140 (Act 29).

 10
 2_Opinion and Order

42 Pa. C.S. §§9799.10-9799.75 (SORNA II). With Subchapter H, SORNA II modified

the registration requirements for individuals who committed offenses on or after

SORNA's effective date of December 20, 2012. See 42 Pa. C.S. § 9799.11. SORNA II

also creates new registration categories for individuals who committed offenses

between April 22, 1996 and December 20, 2012, as well as for those who had been

required to register under any pre-SORNA statute between April 22, 1996, and

December 20, 2012, and whose registration period had not expired. See 42 Pa. C.S. §

9799.52. Our Supreme Court has determined that both amended Subchapters I and H

of SORNA II impose non-punitive, administrative-type registration requirements that are

"merely collateral consequences of a criminal conviction" and therefore permissibly

applied retroactively. Commonwealth v. Smith, 240 A.3d 654, 658 (Pa. Super. 2020);

see also Commonwealth v. Lacombe, 234 A.3d 602, 626 (2020) (rejecting ex post facto

challenge to retroactive application of Subchapter I of SORNA II, finding requirements in

Subchapter I non-punitive); Commonwealth v. Butler, 226 A.3d 972 (2020) ("Butler

1/'J(rejecting ex post facto challenge to retroactive application of Subchapter H of

SORNA II on same grounds as Lacombe).

 C. Application to Downward

 Downward's crimes were committed throughout 2007 and 2008, and he entered

his guilty plea on July 23, 2009. His RNC requirements were therefore determined

under Megan's Law Ill, as was this Court's finding that Downward met the criteria for

SVP classification. Due both to the SVP designation and to the nature of the offenses

to which he pied guilty (IDSI and statutory sexual assault), Megan's Law Ill required

 11
 2_Opinion and Order

Downward to maintain registration with PSP for the remainder of his life. See former 42

Pa. C.S. §§ 9799.12 and 9799.14(d).

 Downward is correct that the Supreme Court struck down Megan's Law Ill as

unconstitutional in 2013 (see Neiman, supra). He is,however,mistaken in his belief

that Neiman's invalidation of Megan's Law Ill operated to remove him from the class of

"existing registrants" subject to the registration provisions of SORNA I. The Neiman

Court anticipated complications attendant to its wholesale invalidation of Megan's Law

Ill and wisely provided an opportunity to the legislature to proactively remedy these

problems prior to the effective date of its decision. The Neiman Court realized that its

 broad invalidation of Act 2004-152-which,again included Megan's
 Law Ill in its entirety -would, without remedial legislation, call into
 question whether someone [sentenced under Megan's Law Ill] would
 be an existing registrant as of SORNA's effective date. Thus, the
 Neiman Court stayed its decision for 90 days to allow for legislative
 action. In March 2014,shortly before the stay expired,the General
 Assembly enacted Act 19 of 2014, see Act of Mar. 14,2014, No. 19,
 P.L. 41 ("Act 2014-19"), which modified the wording of Section
 9799.13(3) to clarify that persons who were required to register with
 the state police at any time before SORNA's effective date, and
 whose registration period had not expired, were still obligated to
 register with the state police as provided in Section 9799.15.

Commonwealth v. Derhammer, 643 Pa. 391,396,173 A.3d 723, 726 (2017). Under the

clarifying language of Act 2014-19, Downward was clearly included in the class of

persons subject to the registration requirements contained in SORNA I. Act 2014-19,

enacted before the Neiman decision officially took effect and invalidated Megan's Law

Ill, ensured that sexually violent offenders who were sentenced under Megan's Law Ill,

like Downward, would not fall through any proverbial registration cracks created when

Neiman took effect and invalidated Megan's Law Ill. As Downward had been obligated

under a statute prior to SORNA I to register with PSP, and his registration period (his

 12
 2_Opinion and Order

lifetime) had not expired, he was and is subject to SORNA I and its replacement,

SORNA II.

 Furthermore, even if we assume, arguendo, that the foregoing analysis is

erroneous, and that despite the Act 2014-19 amendments to SORNA, the invalidation of

Megan's Law Ill did in fact invalidate all RNC requirements imposed by Megan's Law Ill,

the Court finds Downward was nonetheless subject to an unbroken chain of governing

law that continually and properly categorized him as an individual required to register

with PSP for his lifetime. For purposes of analyzing whether Downward was, after

Neiman, a person subject to the registration requirements of SORNA I, the Court finds

that the complete invalidation of Megan's Law Ill did not operate to void Downward's

lifetime registration requirements. The enactment of Megan's Law Ill only amended

Megan's Law II without fully repealing it. Thus, even considering Megan's Law Ill as

void ab initio, Downward was subject to the applicable lifetime registration requirements

found in Megan's Law II, the relevant portion of which remained unaltered in Megan's

Law Ill. Compare former 42 Pa. C.S. §9795.1(b)(2) prior to 2006 (Megan's Law II) and

after 2006 (Megan's Law Ill); see also Act of Nov.29, 2006, P.L. 1567, No. 178

(enacting Megan's Law Ill and reflecting no changes or amendments to existing 42 Pa.

C.S. § 9795.1 (b)(2), regarding offenses requiring lifetime registration). It has been

specifically recognized that a statute which substantially reenacts its predecessor does

not act to interrupt the operation of the former law if the latter is subsequently held to be

unconstitutional. Derhammer, 134 A.3d at 1075-77 (noting that an unconstitutional

statute cannot repeal a former statute). Here, Megan's Law Ill was found to be

unconstitutional. That finding, however, did not operate to interrupt the application of

 13
 2_Opinion and Order

the former law (Megan's Law II) as it applied to persons who committed qualifying

offenses prior to the enactment of SORNA I. Persons having committed and been

convicted of crimes such as Downward's have continually, without interval, been subject

to sex offender registration requirements under every statutory registration scheme

enacted, both prior to and since he committed his offenses in 2007. Under any

analysis, Downward specifically has been and is properly categorized as a person

subject to the registration requirements found in SORNA. See 42 Pa.C.S.A.

§9799.14(a)(3). 13

 Finally, no recent development in the common law frees Downward from his

lifetime RNC requirements. Muniz was inapplicable to Downward as the retroactive

application of SORNA l's registration requirements to him did not result in any

impermissible increases to his existing lifetime RNC requirements. See Adams v.

Pennsylvania State Police, 2021 WL 2405400 (Cmwlth Ct. June 14, 2021)(SORNA I

continued, but did not increase, lifetime registration requirement that applied under

Megan's Law II and Ill for persons convicted of aggravated indecent assault and

therefore retroactive application not unconstitutional violation of ex post facto law;

Muniz does not change this).

 Moreover, Muniz has now been superseded by a constitutional and curative

statutory scheme whose retroactive application is entirely permissible. The

Pennsylvania Supreme Court in Commonwealth v. Lacombe, 234 A.3d 602, 626-27

13 Section 9799.14 of SORNA established a three-tiered system of specifically enumerated offenses
requiring registration for sexual offenders for differing lengths of time. 42 Pa.C.S.A. §9799.14. Two
offenses to which Downward pied guilty qualified him as a Tier Ill offender- statutory assault (18
Pa.C.S. §3122.1(b)) and involuntary deviate sexual intercourse (18 Pa.C.S. §3123). Tier Ill offenders
were subject to lifetime registration requirements, while Tier II offenders were subject to 25 years
registration, and Tier I offenders to 15 years.

 14
 2_Opinion and Order

(Pa. 2020) (SORNA II reporting and registration requirements non-punitive civil

remedies permissibly applied retroactively); see also Act of February 21, 2018, P.L. 27,

No. 10 ("Act 10"); Act of June 12, 2018, P.L. 140, No. 29 ("Act 29")(collectively SORNA

II). Likewise, the Supreme Court has found that the RNC requirements applicable to

SVPs under Subchapter H of SORNA II are non-punitive, explaining:

 [a]lthough we recognize the RNC requirements impose affirmative
 disabilities or restraints upon SVPs, and those requirements have
 been historically regarded as punishment, our conclusions in this
 regard are not dispositive on the larger question of whether the
 statutory requirements constitute criminal punishment. This is
 especially so where the government in this case is concerned with
 protecting the public, through counseling and public notification
 rather than deterrent threats, not from those who have been
 convicted of certain enumerated crimes, but instead from those who
 have been found to be dangerously mentally ill. Under the
 circumstances, and also because we do not find the RNC
 requirements to be excessive in light of the heightened public safety
 concerns attendant to SVPs, we conclude the RNC requirements do
 not constitute criminal punishment.

Commonwealth v. Butler, 226 A.3d 972, 992-93 (2020) (citation omitted) ("Butler //'). 14

Consequently, any argument that the RNC requirements of SORNA II are

unconstitutional as applied to Downward is moot. Downward's lifetime RNC

requirements remain in full force and effect; his 2020 Petition was properly denied and

dismissed.

 Downward's final argument, that his SVP status is invalid because it was

determined under Megan's Law Ill, which is void ab initio, fails for the same reasons

14 Butler II specifically held that the RNC requirements found in SORNA II do not constitute criminal
punishment, such that 42 Pa.C.S. §9799.24(e)(3) is not subject to the requirements of Apprendi v. New
Jersey, 530 U.S. 466 (2000) and Alleyne v. United States, 570 U.S. 99 (2013), and may be applied
retroactively without violating any person's constitutional rights. The Butler II Court also found
constitutionally permissible SORNA ll's procedure for designating individuals as SVPs.

 15
 2_Opinion and Order

outlined above regarding RNC requirements. Downward's SVP status is and has

remained valid throughout the changing landscape of the law governing registration for

sex offenders. The Supreme Court held in Butler II that since the RNC requirements for

SVPs under Subchapter H of SORNA 11 do not constitute criminal punishment, the

procedure for determining if a convicted sex offender is an SVP is constitutionally and

permissibly applied retroactively. See Butler II, supra (because RNC requirements of

SORNA II are not criminal punishment, procedure for designating individuals as SVPs

under 42 Pa.C.S. §9799.24(e)(3) is therefore not subject to requirements of Apprendi ..

.and Alleyne ... and retroactive application remains constitutionally permissible); see

a/so Lacombe, 234 A.3d at 626-27. SORNA II and its common law progeny cure any

deficiencies found in prior law and Downward is properly categorized as an SVP.

Ill. CONCLUSION

 For the foregoing reasons, the Court finds that Downward is subject to the

lifetime RNC requirements pursuant to the statutory dictates of SORNA II as interpreted

by the Supreme Court of Pennsylvania.

 Accordingly, I enter the following:

 16