J-S09025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD CALLOWAY | : | |
| | : | |
| Appellant | : | No. 655 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 5, 2022
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001065-2021

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: June 28, 2023**

Ronald Calloway appeals from the judgment of sentence of forty to 120 months of incarceration, followed by twelve months of mandatory state re-entry supervision, imposed after a jury found him guilty of failure to verify his address pursuant to his sexual offender registration requirements. We affirm.

By way of background, Appellant pled guilty in 2007 to one count of indecent assault as a misdemeanor of the first degree for an act occurring in 2006. He was sentenced to a period of incarceration of six to twelve months and ordered to comply with the conditions of parole. One of those conditions was compliance with Megan's Law registration. *See* Commonwealth's Exhibit 1 (Appellant's Parole Minimum Summary, 9/7/11, at 1). Although it is unclear from the record, it appears that Appellant remained incarcerated following the expiration of the twelve-month maximum he received for the indecent assault

conviction.[1]  Regardless, his Megan's Law paperwork listed his registration start date as October 17, 2012, and his registration end date as October 17, 2022.  ***See e.g.***, Exhibit 2 (Appellant's Sexual Offender Registration, 11/12/20).

Before discussing the conduct underlying Appellant's failure to verify his address, we take a brief detour into the pertinent amendments to sexual offender registration in Pennsylvania.  At the time Appellant was sentenced in 2007, he was subject to a ten-year registration term pursuant to Megan's Law III.  Megan's Law III remained the relevant statute on the books at the time he began his registration in October 2012.

Later that year, however, our legislature replaced Megan's Law III with Megan's Law IV, more commonly known as the Sex Offender Registration and Notification Act ("SORNA").  ***See Commonwealth v. Derhammer***, 173 A.3d

---

[1] In its Pa.R.A.P. 1925(a) opinion, the trial court indicates that "Appellant's registration period was tolled because the Appellant was incarcerated.  The fact that that the Appellant was incarcerated was inadmissible because it was more prejudicial than probative."  Trial Court Opinion, 7/8/22, at 2.  Notably, the record is devoid of any argument or decision related to the admissibility of any periods of incarceration.  However, we note with displeasure that the transcript references several sidebar conferences, including the resolution of objections, that were held off the record.  It is possible that discussions relevant to the issues discussed *infra* were held during those sidebar conferences, but by virtue of Appellant's failure to ensure their inclusion in the certified record, this Court cannot consider anything that may have been discussed therein in rendering our decision.  ***See Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa.Super. 2012) (noting that "it is an appellant's duty to ensure that the certified record is complete for purposes of review" and whenever "portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures" (cleaned up)).

723, 725 (Pa. 2017). After that, our Supreme Court held that Megan's Law III was unconstitutional in its entirety because its enactment had violated the Pennsylvania Constitution's single-subject rule. ***See Commonwealth v. Neiman***, 84 A.3d 603 (Pa. 2013). Our High Court stayed its decision "to provide a reasonable amount of time for the General Assembly to consider appropriate remedial measures, or to allow for a smooth transition period" for those registrants, like Appellant, whose offenses had been committed when Megan's Law III was in effect. ***Id***. at 616. In response, the legislature modified SORNA "to clarify that persons who were required to register with the state police at any time before SORNA's effective date, and whose registration period had not expired, were still obligated to register with the state police as provided in Section 9799.15[.]" ***Derhammer***, ***supra*** at 726.

Meanwhile, in 2017, our Supreme Court held the retroactive application of SORNA upon defendants, like Appellant, whose crimes had been committed before the passage of SORNA was unconstitutional pursuant to the *ex post facto* clause of the Pennsylvania Constitution. ***See Commonwealth v. Muniz***, 164 A.3d 1189, 1193 (Pa. 2017); ***see also Commonwealth v. Hart***, 174 A.3d 660, 667 n.9 (Pa.Super. 2017) ("[T]he binding precedent emerging from ***Muniz*** is confined to the determination that SORNA's registration requirement is punishment that runs afoul of the *ex post facto* clause of the Pennsylvania Constitution when applied retroactively."). In February 2018, our legislature overhauled SORNA in response to ***Muniz***. Of relevance here,

individuals whose offenses were committed "on or after April 22, 1996, but before December 20, 2012" fell under the provisions of Subchapter I. *See* 42 Pa.C.S. § 9799.52(1). Thus, as of 2018, Appellant has been required to register pursuant to Subchapter I.[2]

Pertinent to this appeal, Subchapter I required Appellant to, *inter alia*, inform the Pennsylvania State Police ("PSP") within three business days of a change in residence and to report annually to verify his residence. *See* 42 Pa.C.S. §§ 9799.56(a)(2)(i) (notification regarding change of residence), 9799.60 (b) (annual verification of residence). In compliance therewith, Appellant registered a new address at Edgemont Drive in Uniontown, Pennsylvania in November 2020. The home was owned by Appellant's then-girlfriend, Klarissa Hollins, and Appellant lived there with her until April 5, 2021, when he moved out as a result of a Protection From Abuse ("PFA") order Ms. Hollins obtained against him. Despite having changed his residence, Appellant did not update his address with PSP within the requisite three days. Additionally, when he reported to PSP on April 26, 2021, for the annual verification of his residence, he continued to list the Edgemont Drive address.

---

[2] We note that SORNA initially enlarged Appellant's registration period to fifteen years. However, Subchapter I reverted Appellant's registration period to the original ten-year period.

Due to this failure to update his address, Appellant was charged as indicated hereinabove.[3]

On May 2, 2022, Appellant proceeded to a two-day jury trial. Of relevance to the instant appeal, the Commonwealth presented testimony from PSP Trooper Jessica Zangla, as well as the above-cited Exhibits 1 and 2, to establish that Appellant's ten-year period of registration ran from October 17, 2012, to October 17, 2022. Appellant argued, among other things, that the Commonwealth failed to prove why the registration start date was tolled until October 2012, and therefore failed to establish that Appellant was subject to registration in 2021. *See* N.T. Trial, 5/2/22, at 76. At the conclusion of the trial, the jury found Appellant guilty.

On May 5, 2022, the trial court sentenced Appellant as indicated hereinabove. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant raises the following issues for our review:

1. Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [Appellant] was subject to Megan's Law registration at the time of the alleged offense, and thus failed to prove that [Appellant] violated 18 Pa.C.S. § 4915.1(a)(2).

---

[3] Although the Commonwealth initially charged Appellant for failure to comply with Subchapter H's registration requirements, the trial court permitted the Commonwealth to amend the information to a violation of 18 Pa.C.S. § 4915.2, which relates to failure to comply with Subchapter I's registration requirements. *See* N.T. Trial, 5/2/22, at 14 (noting the court's approval of the amendment).

- 5 -

2. Whether the trial court erred in permitting the Commonwealth to offer the Megan's Law file as a business record under Pa.R.E. 803(6) or 902 where the documents were not properly authenticated?

3. Whether [Appellant] was denied his Sixth Amendment right to confront witnesses against him where the Commonwealth was permitted to rely upon the unauthenticated Megan's Law firm [*sic*] and Trooper Zangla's hearsay testimony regarding Appellant's registration start and end dates?

Appellant's brief at 5 (reordered for ease of disposition).

We first address Appellant's sufficiency challenge "[b]ecause a successful sufficiency of the evidence claim warrants discharge on the pertinent crime[.]" **Commonwealth v. Toritto**, 67 A.3d 29, 33 (Pa.Super. 2013) (cleaned up). We consider this claim mindful of our well-settled standard of review:

When reviewing a sufficiency-of-the-evidence claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. Critically, the jury, when ruling on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Roberts*, \_\_\_ A.3d \_\_\_, 2023 WL 2358844, at \*1 (Pa.Super. 2023) (cleaned up). Appellant was charged with failure to verify his address, which is defined in relevant part as follows:

> **(a) Offense defined.--**An individual who is subject to registration under 42 Pa.C.S. § 9799.55(a), (a.1) or (b) (relating to registration) or who was subject to registration under former 42 Pa.C.S. § 9793 (relating to registration of certain offenders for ten years) commits an offense if the individual knowingly fails to:
>
> . . . .
>
> (2) verify the individual's residence or be photographed as required under 42 Pa.C.S. § 9799.60 (relating to verification of residence)[.]
>
> . . . .
>
> **(f) Applicability.--**This section applies to:
>
> (1) An individual who committed an offense set forth in 42 Pa.C.S. § 9799.55 on or after April 22, 1996, but before December 20, 2012, and whose period of registration under 42 Pa.C.S. § 9799.55 has not expired.

18 Pa.C.S. § 4915.2.

Appellant does not challenge the elements of the offense, but rather whether the Commonwealth proved beyond a reasonable doubt that Appellant's ten-year registration for his 2007 conviction had not expired as of April 2021, where the Commonwealth did not present evidence of why his start date did not begin until 2012. *See* Appellant's brief at 20-21. In other words, Appellant contests the statute's applicability. According to Appellant, "the jury could not reasonably infer that certain periods of time were tolled as there was no evidence presented as to any tolling." *Id*. at 21.

At trial, Trooper Zangla testified that, based upon Appellant's Megan's Law file, he is classified as a ten-year registrant whose active registration began on October 17, 2012. **See** N.T. Trial, 5/2/22, at 40-41, 47. Additionally, the Commonwealth introduced Appellant's sexual offender registration from November 2020, which he signed, and which states that his ten-year registration period ran from October 17, 2012 to October 17, 2022. **See** Commonwealth's Exhibit 2 (Appellant's Sexual Offender Registration, 11/12/20). Based on the foregoing, the evidence was sufficient for the jury to determine that Appellant was subject to sexual offender registration when he neglected to update his address in April 2021. **See Roberts**, **supra** at *3 (finding evidence sufficient to establish that defendant was a lifetime registrant where the trooper "flatly told the jury that Roberts was a lifetime registrant, and the jury believed him"). It was squarely within the jury's purview to find Trooper Zangla and Appellant's November 2020 registration form credible in determining Appellant's registration period. The Commonwealth bore the burden of establishing that Appellant was subject to registration at the time he failed to update his address, it was not required to explain why. Accordingly, Appellant's first claim lacks merit.

Appellant's next issue attacks the trial court's decision to permit Trooper Zangla's testimony about Appellant's registration start and end dates based upon hearsay evidence from an unauthenticated Megan's Law file. **See** Appellant's brief at 17-18. Specifically, Appellant challenges the admission of

Exhibit 1 (Appellant's Parole Minimum Summary, 9/7/11) and Exhibit 2 (Appellant's Sexual Offender Registration, 11/12/20).

We consider this claim mindful of the following legal principles. Evidentiary rulings lie within the sound discretion of the trial court and will only be overturned where the court has abused its discretion. *See Commonwealth v. DiStefano*, 265 A.3d 290, 297-98 (Pa. 2021). "An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power." *Id*. at 298 (cleaned up). This Court has explained that an abuse of discretion is "not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa.Super. 2014) (cleaned up). Finally, an abuse of discretion based upon a disagreement with the trial court's decision is improper, as this Court is not permitted to "substitute [our] own judgment for that of the trial court." *DiStefano*, *supra* at 298 (cleaned up).

With respect to the admissibility of hearsay evidence, "Pennsylvania Rule of Evidence 801 defines hearsay as an out-of-court statement made by a declarant, which is offered into evidence to prove the truth of the matter

asserted. This type of evidence is generally inadmissible at trial unless it falls into an exception to the hearsay rule." ***Commonwealth v. Wallace***, 289 A.3d 894, 895 (Pa. 2023) (cleaned up). The relevant exception in this appeal is the business records exception, which provides as follows:

> A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> > (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
> >
> > (C) making the record was a regular practice of that activity;
> >
> > (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> >
> > (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

In considering this issue, we find persuasive this Court's recent decision in ***Commonwealth v. Fornah***, 285 A.3d 900 (Pa.Super. 2022) (non-precedential decision). Therein, the defendant was charged with failing to comply with Subchapter I's registration requirements. Fornah was a lifetime registrant under Subchapter I based upon a 1989 conviction for rape in Washington state. In responding to a disturbance at Fornah's residence, an

- 10 -

officer learned that Fornah had an outstanding warrant in Washington for a Megan's Law violation. The officer conveyed this information to the police department's Megan's Law liaison, Detective Heather Halstead. Detective Halstead, in turn, confirmed Fornah's triggering conviction, corresponding registration requirements, and outstanding warrant with officials in Washington State, who supplied her with certified copies of the relevant court records. When Detective Halstead informed Fornah that he was required to register in Pennsylvania pursuant to SORNA, he disagreed, claiming he was innocent of the underlying offense. Upon learning from the PSP that Fornah had failed to register as a sexual offender, she obtained a warrant for his arrest.

At Fornah's trial, PSP Trooper Chad Roberts testified that he was the liaison for the Megan's Law unit in Harrisburg and detailed, among other things, the PSP SORNA checklist used with regard to Fornah's registration status. Fornah's counsel objected to the testimony regarding the PSP checklist as violative of Fornah's right to confrontation and because it constituted inadmissible hearsay. With respect to the hearsay challenge, the trial court determined, over Fornah's objection, that Trooper Roberts qualified as a custodian for the PSP checklist:

> In his testimony, Trooper Roberts stated that as part of his professional duties he worked with the PSP Megan's Law unit in Harrisburg, responsible for determining if an individual needs to register based on their past convictions. PSP maintains the state-wide registry of all persons convicted of sex offenses, including out-of-state offenders who were required to register in

Pennsylvania. Trooper Roberts had access to all of the records kept by the Megan's Law Unit in Harrisburg, and those records were maintained under the care and custody of PSP in their regular course of business. Trooper Roberts stated that "we would obtain the actual records from the Megan's Law Unit and be a keeper of those records to present in court testimony like we are here today."

*Id*. (non-precedential decision at 13) (cleaned up). Pursuant to Rule 803(6), this Court concluded that the trial court did not abuse its discretion in finding that Trooper Roberts qualified as a custodian for the PSP checklist.

Here, Trooper Zangla testified that she was a Megan's Law liaison for the PSP. *See* N.T., 5/2/22, at 34. She explained to the jury the basic purpose of Megan's Law, that the PSP is tasked with maintaining Pennsylvania's sexual offender registry, and that the PSP works with other jurisdictions and state agencies to monitor registration. *Id*. at 35. Additionally, Trooper Zangla testified generally as to how offenders are notified of the need to register initially and annually, where they go to register, and the time frame for updating a change in address arising outside the annual reporting requirement. *Id*. at 36-39. With respect to Appellant, Trooper Zangla brought Appellant's Megan's Law file, which included "all of his registration and court documentation, everything for Megan's Law." *Id*. at 40. Exhibits 1 and 2 were contained within that file and specifically pulled out as exhibits. Based in part upon those exhibits, Trooper Zangla testified as to Appellant's ten-year period of registration and the attendant reporting requirements.

Considering the foregoing, the trial court determined that Trooper Zangla, as a Megan's Law liaison, was a custodian of the Megan's Law file. Further, it concluded that the file, which included Exhibits 1 and 2, was kept in the regular course of the PSP's activities. **See** N.T. Trial, 5/2/22, at 58-59; N.T. Trial, 5/3/22, at 9-10. Upon review of the certified record, we discern no abuse of discretion in the trial court's conclusions.

Appellant makes one final attempt at assailing the Commonwealth's evidence regarding the start date for his sexual offender registration. Specifically, he argues that "Trooper Zangla's hearsay testimony and the documents contained in the Megan's Law file were clearly testimonial in nature, and thus [Appellant] was denied his right to cross-examine witnesses who claimed his registration start date began on October 17, 2012, when he was convicted of the underlying charge [in] 2007." Appellant's brief at 14.

We consider this final argument within the following framework. "Whether a defendant has been denied his right to confront a witness is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Fitzgerald**, 284 A.3d 465, 470 (Pa.Super. 2022) (cleaned up). Our Supreme Court has explained the Confrontation Clause as follows:

> The Confrontation Clause of the Sixth Amendment, made applicable to the States via the Fourteenth Amendment, provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. [The U.S. Supreme] Court held that the Sixth Amendment guarantees a defendant's right to confront those who bear testimony against

- 13 -

him, and defined testimony as a solemn declaration or affirmation made for the purpose of establishing or proving some fact. The Confrontation Clause, the High Court explained, prohibits out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.

***Commonwealth v. Yohe***, 79 A.3d 520, 530–31 (Pa. 2013) (cleaned up).

To determine whether a statement is testimonial, "and, therefore, subject to the protections of the Confrontation Clause . . ., a court must review the statement itself in order to determine whether the primary purpose of the evidence was to establish or prove past events relevant to a later criminal prosecution." ***Id***. (cleaned up). Notably, "even if a record falls within the business record exception, its admission may still violate the Confrontation Clause of the Sixth Amendment of United States Constitution." ***Commonwealth v. Carter***, 932 A.2d 1261, 1264 (Pa. 2007) (cleaned up).

Once again, we find instructive this Court's decision in ***Fornah***. The ***Fornah*** Court held that the "PSP's worksheet was not testimonial and therefore its admission through Trooper Roberts'[s] testimony did not violate the Confrontation Clause." ***Fornah***, ***supra*** (non-precedential decision at 15). In so holding, this Court observed that "the PSP worksheet was not created for an evidentiary purpose and the PSP did not create the worksheet 'under circumstances which would lead an objective witness reasonably to believe that the [document] would be available for use at a later trial.'" ***Id***. (non-precedential decision at 15) (quoting ***Yohe***, ***supra*** at 537 (citation omitted)). Rather, we concluded that "the report's primary purpose was to determine

whether Fornah had to register under SORNA, and the PSP had a statutory duty to maintain a sex offender database. **See** 42 Pa.C.S. § 9799.67."

**Fornah**, **supra** (non-precedential decision at 15-16) (cleaned up).

Here, Appellant challenges the admission of Trooper Zangla's testimony and Exhibits 1 and 2. We begin with Trooper Zangla's testimony. Plainly, Appellant's right to confront Trooper Zangla was not violated as there were no out-of-court statements made by Trooper Zangla admitted at trial. Even if there had been, she was clearly available and subject to cross-examination and two rounds of re-cross-examination. As to Appellant's argument that Trooper Zangla's testimony regarding his registration start and end dates based upon documents contained in the Megan's Law file violated his right to confrontation, our review of the record confirms that Appellant not only had ample opportunity to attack her reliance on those documents and the credibility of any testimony based thereon, but in fact did so. **See** N.T. Trial, 5/2/22, at 49-50 ("Your testimony that you been giving today is that you have a bunch of documents that you went through and you are telling us what these documents say; is that correct?"), 69-70 (highlighting that Trooper Zangla was relying on parole documents while not being connected to the parole board in any way). Accordingly, it is wholly apparent that Appellant was not denied his right to confrontation with respect to Trooper Zangla's testimony.

We now turn to the documentary evidence. Upon review of the certified record, we conclude that Exhibits 1 and 2 are similar to the PSP worksheet

discussed in **Fornah**. To wit, Appellant's Megan's Law file was required to be maintained pursuant to § 9799.67, which outlines the duties of the PSP regarding the creation and maintenance of a statewide sexual offender registry. The file was created to determine whether Appellant had to register, not for an evidentiary purpose or in a manner that would lead an objective individual to reasonably believe that the file would be used at a later trial. The same holds true for the individually admitted documents contained therein, *i.e.*, Appellant's parole summary and Appellant's November 2020 sexual offender registration. Since the contested documents are not testimonial, the Confrontation Clause is not implicated and Appellant's argument fails.

To summarize, we determine that the evidence was sufficient to sustain Appellant's conviction, that the trial court did not abuse its discretion in admitting Exhibits 1 and 2 pursuant to the business record exception, and the admission of evidence regarding Appellant's registration period did not violate his right to confrontation. Thus, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2023